23 S.W.3d 604 (2000)
In the Interest of K.C., Jr., and J.M.C.
No. 09-99-461CV.
Court of Appeals of Texas, Beaumont.
Submitted June 26, 2000.
Decided August 17, 2000.
*605 Bruce W. Cobb, Marva J. Provo, Beaumont, for appellants.
Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Asst. Crim. Dist. Atty., Beaumont, for appellees.
Before WALKER, C.J., BURGESS and STOVER, JJ.

OPINION
RONALD L. WALKER, Chief Justice.
This is an appeal of a decree terminating the parental rights of Keith Rodney Collins, Sr. to his minor child, K.C., and also terminating the parental rights of Barris Walls to his minor child, J.M.C. The parental rights of Carole Lynn Crawford, the mother of K.C. and J.M.C., were terminated by a separate decree. Collins and Walls appealed.

Sufficiency of the Evidence
Both men challenge the sufficiency of the evidence to support various findings of the trial court. A previous opinion of this Court described the standard of review in appeals from termination decrees:
In the trial court, both the statutory ground or grounds for termination and the child's best interest must be proven by clear and convincing evidence. Tex. Fam.Code Ann. § 161.001 (Vernon 1996). In deciding a legal sufficiency point, we consider only the evidence and inferences supporting the trial court's findings and disregard all contrary evidence and inferences. Lucas v. Texas Dep't of Protective and Regulatory Serv., 949 S.W.2d 500, 502 (Tex.App.-Waco 1997, writ denied). If more than a scintilla of evidence supports the trial court's findings, the appealing parent can not prevail on a legal sufficiency point. In the Interest of R.D., 955 S.W.2d 364, 368 (Tex.App.-San Antonio 1997, writ denied).
To withstand a challenge of factual sufficiency, the evidence must permit a rational trier of fact to hold a firm belief or conviction as to the truth of the allegations sought to be established. Id. We consider all of the evidence and determine whether the factfinder could reasonably conclude the existence of the fact is highly probable. In the Interest of B.R., 950 S.W.2d 113, 119 (Tex.App.-El Paso 1997, no writ). An appellant *606 will succeed in challenging the factual sufficiency of the evidence only if the trier of fact could not reasonably have found the fact was established by clear and convincing evidence. Id. [footnote omitted]
Interest of B.B., 971 S.W.2d 160, 164 (Tex.App.-Beaumont 1998, pet. denied).
Child Protective Services ("CPS") alleged twenty separate grounds for termination. Of those grounds, the trial court found Barris Walls: (1) knowingly placed and knowingly allowed J.M.C. to remain in conditions or surroundings which endanger J.M.C.'s physical or emotional well-being; (2) engaged in conduct and knowingly placed J.M.C. with persons who engaged in conduct which endangers J.M.C.'s physical or emotional well-being; and (3) knowingly engaged in criminal conduct that resulted in Walls's imprisonment and inability to care for J.M.C. for not less than two years from the date of filing the petition. See Tex. Fam.Code Ann. § 161.001(1)(D), (E) & (Q)(Vernon Supp. 2000).[1] The trial court found Keith Rodney Collins, Sr.: (1) knowingly placed or knowingly allowed K.C. to remain in conditions or surroundings which endanger K.C.'s physical or emotional well-being; and (2) engaged in conduct or knowingly placed K.C. with persons who engaged in conduct which endangers K.C.'s physical or emotional well-being. The trial court also terminated any parent-child relationship between the appellants and the children because neither Walls nor Collins filed an admission of paternity, counterclaim for paternity, or petition for voluntary legitimization. See Tex. Fam.Code Ann. § 161.002(b) (Vernon Supp.2000).

The Evidence
According to Stephanie Fenton, a CPS caseworker, Crawford admitted using drugs during her pregnancy and to using LSD when she went into labor with K.C. She also admitted to using crack cocaine, alcohol, and marijuana. K.C. was later hospitalized for surgery on his abdomen. He also had meningitis and fluid buildup in the frontal lobe of his brain. Either the meningitis or the drug use caused K.C.'s learning disabilities. Collins had a relationship with Crawford at the time and had ample opportunity to know about her drug abuse.
When K.C. was seven months old, Crawford reported that Collins spanked and possibly slapped K.C. on the face. Collins was arrested for injury to a child, but the charges were later dismissed. Collins was convicted of a misdemeanor assault on Crawford. After Collins was incarcerated, there were seven or eight referrals on K.C. before CPS intervened. At age nine, K.C. was in second grade and could read very little. When CPS intervened, Crawford, her boyfriend, and the two children were living in a small shack, without electricity or a bathroom. A mattress was on the floor. The children were not getting food. Collins made no attempt to support K.C., or to make arrangements with anyone else to provide for K.C.
Collins has been incarcerated for auto theft and possession of a controlled substance since violating his parole in 1996. The only contact he made with K.C. while K.C. has been in CPS custody is one belated Easter card and one card sent in the summer. The CPS worker had been in contact with Collins's brother about caring for the children, but the brother was not willing to care for J.M.C. Since K.C. and J.M.C. were very bonded, CPS was not willing to place them separately.
Collins testified at the hearing. Although there was no court order obligating Collins to pay child support, he supported the child when he was not in prison. He left K.C. with Crawford because she was his girl and he had to trust her. While he was in prison, he did not realize K.C. was *607 not going to school until after K.C. was picked up. Collins admitted he did all of the things for which he was incarcerated. Collins has K.C.'s name tattooed on his arm because he loves K.C. Collins felt it was a possibility he would be released within the year.
The CPS worker testified that Crawford admitted buying crack cocaine from Walls's mother while Crawford was pregnant with J.M.C. Walls had a relationship with Crawford, and his mother baby-sat J.M.C., so Walls was aware of his child's environment. At age two, J.M.C. is developmentally delayed, possibly from lack of stimulation in her environment or drug use during pregnancy. When paternity testing was suggested, around October 1998, Walls stated that he felt strongly that he might be J.M.C.'s father. Although Walls was not incarcerated at the time, he failed to appear for the court-ordered paternity test or attend a permanency planning meeting or the planned visit with J.M.C. He provided no support for J.M.C. Walls had two delivery of controlled substance charges and a forgery charge. His probation was revoked in May 1999 when he tested positive for drug use. It was during his incarceration that the paternity test was conducted. Walls did not visit the child on a regular basis. The only family member Walls suggested for caretaking purposes was his mother, but CPS was not willing to place J.M.C. with her because she sold cocaine to Crawford.
Walls testified at the hearing. He did not contact J.M.C. because he figured a two year old child could not read. Walls did not take the paternity test when ordered because he was on drugs. If he had realized J.M.C. was his daughter while he was still in the free world, he would have tried to take her away from Crawford. Walls claimed he saw J.M.C. once, when his mother was babysitting. At that time, Crawford was claiming J.M.C. might be his, but she was not sure. He was aware that Crawford had a drug problem while she was caring for J.M.C., but he had a cocaine abuse problem, too. Walls admitted that J.M.C.'s living with Crawford was not good for the child's emotional well-being. He also admitted he knew Crawford was not a good mother back when he avoided taking the paternity test.

The Arguments
The sole point of error raised by Walls contends the trial court erred in terminating his parental rights because the State failed to prove that he engaged in conduct that endangered the physical and emotional well-being of J.M.C. Walls argues he only discovered he was the biological father of J.M.C. when the court-ordered paternity test revealed her parentage. There is some support for his position. In Djeto v. Texas Dept. of Protective and Regulatory Servs., 928 S.W.2d 96, 98 (Tex.App.-San Antonio 1996, no writ), the court held the father had no responsibility for his child's physical or mental well-being prior to acknowledgment of paternity or the rendition of an order of paternity. Djeto concerned a termination under Section 161.001(1)(D), (F). In contrast, In re M.D.S., 1 S.W.3d 190, 198 (Tex.App.-Amarillo 1999, no pet.), held a father's conduct prior to the establishment of his paternity could be considered under Section 161.001(1)(E). Walls disputes the trial court's finding of grounds for termination under Section 161.001(1)(E), but does not present arguments regarding the trial court's findings of grounds for termination under Section 161.001(1)(D), Section 161.001(1)(Q), or Section 161.002. Were we to hold the record contains insufficient evidence to support the trial court's finding that Walls engaged in conduct which endangered J.M.C., the decree of termination would be supported by the unchallenged findings. Nevertheless, we hold the trial court could have reasonably found the fact that Walls endangered J.M.C.'s physical and emotional well-being to have been established by clear and convincing evidence. Walls himself attributed to his *608 drug abuse his failure to acknowledge responsibility for J.M.C. and to protect J.M.C. from her mother's injurious behavior. His drug use is also directly related to his incarceration and subsequent inability to care for J.M.C. Imprisonment, coupled with a course of conduct including drug abuse, may support a finding that the parent engaged in a course of conduct which endangered a child's physical or emotional well-being. See Matter of W.A.B., 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Walls's point of error is overruled.
Collins argues much of the testimony of the CPS worker, Stephanie Fenton, was hearsay. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. Tex.R. Evid. 802.
Collins was aware of Crawford's drug abuse but did nothing about it. He made no effort to protect K.C. from his mother's injurious habits. Once incarcerated, Collins did not maintain any significant correspondence with K.C. or arrange for his family to care for K.C. Although aware that the child's mother was not an adequate caregiver, Collins did not provide an alternate placement for K.C. A finding under Section 15.02(1)(E) (now Section 161.001(1)(E)) is supportable by evidence, including imprisonment, that shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child. Texas Dep't. of Human Servs. v. Boyd, 727 S.W.2d 531, 534 (Tex.1987); Interest of B.S.T., 977 S.W.2d 481, 485 (Tex.App.-Houston [14th Dist.] 1998, no pet.)
Collins argues termination is not in K.C.'s best interest because "his problems were behind him now." To the contrary, Collins's problems were not behind him, as he was presently incarcerated. The evidence weighing against the findings of fact is not so overwhelming as to cause us to conclude that the trial court could not have reasonably found the alleged grounds for termination were established by clear and convincing evidence. The trial court's findings that Collins endangered K.C.'s well-being and that termination is in the best interest of K.C. are supported by evidence we hold to be both legally and factually sufficient. These findings will support the termination decree; therefore, we do not reach the points of error raised in issues three and five. Issues four and six are overruled.

Constitutional Issues
Issue one asks whether the trial court terminated Collins's parental rights in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Collins complains that his parental rights were terminated upon the uncorroborated hearsay of the CPS worker. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. Tex.R. Evid. 802. Collins was present in the courtroom and represented by counsel. Fenton was fully subject to cross-examination. Her testimony could have been objected to if it were inadmissible, or impeached or rebutted if it were unreliable. The appellant's due process rights are not implicated. Issue one is overruled.
Issue two contends the trial court violated Collins's rights under the Fourteenth Amendment to the United States Constitution by conducting a non-jury trial without an express waiver of the right to a jury trial. The Family Code provides for trial by jury upon request. Tex. Fam.Code Ann. § 105.002 (Vernon Supp.2000). It appears no one requested a jury trial, and the case was tried to the court without objection.
The cases cited by the appellant concern the denial of the right to a jury trial when one has been demanded, not the implied waiver of that right. See Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Collins concedes an implied waiver *609 of the right to a jury trial is present in this case, but argues an express waiver should be required because of the fundamental nature of the parental right affected in termination proceedings. The requirement of an express waiver of jury trial in criminal cases lies in the Code of Criminal Procedure, not the United States Constitution. See Tex.Code Crim. Proc. Ann. art. 1.13 (Vernon Supp.2000). We hold Collins waived his right to a jury trial by failing to invoke that right. Issue two is overruled.
The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The statute applicable to the termination of parental rights of Collins and Walls is found in the Act of May 19, 1997, 75th Leg., R.S., Ch. 575, § 9, 1997 Tex. Gen. Laws 2014-15, (amended 1999) (current version at Tex. Fam.Code Ann. § 161.001 (Vernon Supp.2000)).