Opinion issued February 27, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00474-CV




IN THE INTEREST OF C.M.W., E.D.W., AND N.D.M., CHILDREN




On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2000-07663J




MEMORANDUM OPINION
          We are asked to determine whether the trial court erred in terminating Monica
W.’s parental rights to her children. In three issues presented for review, Monica
challenges the legal and factual sufficiency of the evidence to support the trial court’s
findings that she endangered her children or allowed others to endanger them, and
that termination was in the children’s best interest. We affirm.
Factual & Procedural Background
          Monica first came to the attention of the Texas Department of Protective and
Regulatory Services (TDPRS) when she herself was a 12-year-old child. After
making a sexual abuse outcry, she spent about a year in foster care and was eventually
raised by her grandmother instead of her mother. Monica gave birth to her first child
when she was 14 years old. By the time she was 21, she had borne four more
children, three of whom—C.M.W., E.D.W., and N.D.M.—are the subject of this
appeal. In the past 10 years, TDPRS received eight referrals from relatives and
school personnel concerning Monica’s children. The complainants made different
allegations at different times, including allegations of neglectful supervision, physical
neglect, physical abuse,


 and sexual abuse. 
          The referral that ultimately led to the children’s removal and the termination
proceedings came in August 2000 from a school district coordinator who was worried
about whether the children had enough food or a proper home environment. When
a TDPRS caseworker investigated this referral, she discovered that Monica and the
children were living with Monica’s boyfriend, a registered sex offender. Monica did
not want to go to a shelter with the children because she feared that they would be
exposed to drugs there; instead, she asked the caseworker to make arrangements for
the children to live elsewhere until she could stabilize her life.
          Monica agreed to a family service plan that required her to undergo
drug/alcohol and psychological assessment, attend parenting classes, attend
individual and family counseling, obtain suitable housing, and obtain stable
employment. She complied with part of this plan, but not with all of it. Most
significantly, she had not obtained stable housing or employment at the time of the
hearing. Eventually, TDPRS moved to terminate Monica’s parental rights. After a
bench trial, the trial court rendered a decree of termination and this appeal ensued.
Analysis
          A trial court may order the termination of the parent-child relationship if the
court finds, by clear and convincing evidence, that one or more of various acts
enumerated in section 161.001(1) of the Family Code was committed and that
termination is in the best interest of the child. Tex. Fam. Code. Ann. § 161.001(1)
(Vernon 2002); Robinson v. Tex. Dep’t of Protective & Regulatory Servs., 89 S.W.3d
679, 686 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
          In its decree of termination, the trial court found by clear and convincing
evidence that Monica had violated subsections (D) and (E) of section 161.001(1)
because she (1) “knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endanger the physical or emotional well-being of
the children”;


 and (2) “engaged in conduct or knowingly placed the children with
persons who engaged in conduct which endangers the physical or emotional
well-being of the children.”


 Based on these findings, the court determined that
termination was in the best interest of the children.


 
          Standards of Review
          A parent’s rights to “the companionship, care, custody and management” of his
or her children are constitutional interests “far more precious than any property right.”
Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982). In a
termination case, the State seeks not just to limit those rights but to end them
permanently—to divest the parent and child of all legal rights, privileges, duties, and
powers normally existing between them, except for the child’s right to inherit. Tex.
Fam. Code Ann. § 161.206(b) (Vernon 2002); Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985).
          Because of the unique nature and value of parental rights, evidence supporting
the findings to terminate parental rights must be clear and convincing, not merely
preponderate. In re G.M., 596 S.W.2d 846, 847 (Tex. 1980); Harris v. Herbers, 838
S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1992, no writ). The clear and
convincing standard is that degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought to be
proved. Robinson, 89 S.W.3d at 685.
          In a legal sufficiency review based on a clear and convincing standard of proof,
we review all of the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that
its finding was true. In re J.F.C., 46 Tex. Sup. Ct. J. 328, 333 (Dec. 31, 2002). We
disregard all evidence that a reasonable factfinder could have disbelieved or found
to have been incredible. Id. at 334. This does not mean, however, that we must
disregard undisputed facts that do not support the finding, because so doing could
skew the analysis of whether there is clear and convincing evidence. Id. 
          In a factual sufficiency review based on a clear and convincing standard of
proof, we must determine whether, based on the entire record, a fact-finder could
reasonably form a firm conviction or belief that the parent endangered the child and
that the termination of parental rights would be in the best interest of the child. In re
C.H., 89 S.W.3d 17, 29 (Tex. 2002).
          Statutory Grounds for Termination
          In issues one and two, Monica challenges the legal and factual sufficiency of
both of the statutory grounds under which her rights were terminated. We first
address whether the evidence is sufficient to show that Monica knowingly placed or
knowingly allowed the children to remain in conditions or surroundings which
endangered their physical or emotional well-being. See Tex. Fam. Code Ann. §
161.001(1)(D). To “endanger” means to expose a child to loss or injury or to
jeopardize a child’s emotional or physical health. Tex. Dep’t of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex. 1987). While “endanger” means more than a
“threat of metaphysical injury or the ill effects of a dysfunctional family,” it does not
require that the conduct be actually directed at a child or that a child suffer an actual
injury. Id. 
          Although Monica describes most of the trial testimony as hearsay, she made
no hearsay objections at trial. Inadmissible hearsay admitted without objection shall
not be denied probative value merely because it is hearsay. See Tex. R. Evid. 802. 
Moreover, the witnesses were fully subject to cross-examination and their testimony
could have been impeached or rebutted if it was unreliable. Accordingly, we examine
all of the testimony. See In re K.C., Jr., 23 S.W.3d 604, 608 (Tex. App.—Beaumont
2000, no pet.).
          The testimony consisted of the following:
•A school nurse (Sharlotte Hughes), a school counselor (Julie Desporte), and
a school district family involvement coordinator (Mary Ann Martinez), all
testified that the children were always dirty; had dirty hair and clothing; had
poor hygiene and offensive body odors, to the degree that other children
avoided or teased them; were often tardy or absent from school; were often
very hungry and in search of something to eat, including asking to take food
home; and were functioning academically at low levels;
 
•Martinez also testified that the mother’s boyfriend smelled of alcohol early in
the morning on more than one occasion;
 
•The children’s therapist, Gayle Fuller, who was called as an expert witness,
testified that the children had been exposed to pornographic videos; she stated
her belief that what happened to the children before they were taken into
custody was “devastating,” and that it would take extended therapy to help
them cope with it;
 
•A Children’s Assessment Center forensic interviewer, Tammy Urban, testified
that the children had been exposed to adult sexual behavior and that Monica
had not protected the children from sexual abuse;
 
•The foster mother


 who cared for the children when they first came into care
testified that the children’s physical condition was bad when they arrived, and
that the girls had impetigo, ringworm, and fungal infections. She also said the
children used inappropriate abusive language with one another;
 
•A second foster mother testified that C.M.W. and E.D.W. regressed after visits
with Monica, wetting and soiling the bed; she testified the boys had told her
they were disciplined by being locked in a closet with a rat;
 
•A third foster mother testified that N.D.M. has acted out in a sexually
inappropriate way and has told her foster mother she has had sex with her
brothers or one of their friends;
 
•Kathleen Forde, a Child Advocates volunteer assigned to work with Monica,
testified that she initially believed Monica could reach the point where her
children could be returned to her, but changed her mind after many months
without significant progress. Forde testified that all of the children told her
they had been abused by several of Monica’s boyfriends. She corroborated the
testimony from the boys’ foster mother, and said that the boys would urinate
or defecate on themselves when Monica tells them they will be coming home;
 
•Ernestine Hay, who led Monica’s parenting classes, testified that Monica
attended all of the classes and successfully completed the course; she believed
Monica had learned adequate parenting skills by the end of the course. Hay
also testified that Monica successfully completed alcohol/drug screening. 
Although Monica was expected to undertake individual counseling with Hay,
she attended only two sessions before suspending the appointments;
 
•Sandra O’Brien, the children’s TDPRS caseworker, testified that Monica did
not obtain stable housing or employment despite agency assistance on both
fronts and the understanding that these factors were critical to the children’s
return. She further testified that she believed Monica was in denial about her
neglect of the children;
 
•Monica denied exposing her children to inappropriate sexual activity, denied
that she sent the children to school in dirty clothes, and denied that there had
been any physical abuse. Monica testified that she loved her children and had
found a stable place to live with a friend named Dorothy, but was not able to
provide the address or Dorothy’s last name. She testified she had been
working, but was unable to provide recent pay stubs. She successfully
completed the parenting classes, moved out of her boyfriend’s home because
she did not want to expose her children to him, and attempted to create a new
life in Georgia for the family. She also testified she was trying to find a better
job.

          In addition to the foregoing testimony, the record contains multiple volumes
of exhibits repeating much of the testimony in written reports and assessments
conducted while the children have been in foster care. E.D.W.’s need for speech
therapy has abated, and the boys have begun to perform very well in school. N.D.M.
no longer has nightmares and her tantrums are lessening. The trial court was able to
review all of these records and to assess the progress the children have made since
being placed in foster care. 
          After considering the record in its entirety, we conclude the evidence was
legally and factually sufficient for the trial court to have reasonably formed a firm
belief that Monica allowed her children to remain in surroundings that endangered
their physical and emotional well-being. We overrule issue one.
          Only one finding alleged under section 161.001(1) is necessary for a judgment
of termination. Robinson, 89 S.W.3d at 686. Therefore, because we have concluded
that the evidence is factually sufficient to support the trial court’s findings under
section 161.001(1)(D), we need not evaluate the sufficiency of the evidence under
section 161.001(1)(E) and we decline to address issue two.
          Best Interest of the Children
          In issue three, Monica challenges the legal and factual sufficiency of the trial
court’s finding that termination would be in the best interest of the children. See Tex.
Fam. Code Ann. § 161.001(1). Some of the factors an appellate court may consider
in ascertaining the best interest of a child include (1) the desires of the children; (2)
the emotional and physical needs of the children now and in the future; (3) the
emotional and physical danger to the children now and in the future; (4) the parental
abilities of the individuals seeking custody; (5) the programs available to assist these
individuals to promote the best interest of the children; (6) the plans for the children
by these individuals or by the agency seeking custody; (7) the stability of the home
or proposed placement; (8) the acts or omissions of the parent which may indicate
that the existing parent-child relationship is not a proper one; and (9) any excuse for
the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976). “Best interest” does not require proof of any unique set of factors, nor does
it limit proof to any specific factors. Id. The absence of evidence about some of
these factors does not preclude a factfinder from reasonably forming a strong
conviction or belief that termination is in the child’s best interest. Id. Evidence that
is probative of acts or omissions under subsection 161.001(1) may also be probative
in determining whether termination is in the best interest of the child. In re C.H., 89
S.W.3d at 28.
          We first address Monica’s contention that the evidence did not rise to the level
of clear and convincing because only one expert testified regarding the children’s best
interest, and because the caseworkers and foster mothers were not qualified to
recommend termination of the parent-child relationship. She cites no authority to
suggest that TDPRS was obligated to offer testimony from more than one expert
witness, or standing for the proposition that lay opinions should be disregarded, and
we can find none. Moreover, she made no objection at trial to the admission of the
expert or lay opinion testimony. Thus, any error in admitting this testimony was
waived. See Tex. R. App. P. 33.1.
          We now turn to the evidence regarding whether termination was in the
children’s best interest. In regard to the Holley factors, the record shows the
following: 
          (1) Children’s Desires
The boys have told Forde that they love their foster parents and do not want to
return home. N.D.M. has not said she does not want to go home, but has said
she is not ready to go home right now, and perhaps not a year from now. The
children have all expressed their disappointment when Monica does not follow
through with her promises to them.
 
(2) Children’s Current and Future Emotional and Physical Needs
The children have substantial needs in addition to their basic needs for food,
cleanliness, clothing, shelter, and appropriate supervision. They need ongoing
psychological therapy because of what they have experienced in life, and
E.D.W. may need additional speech therapy. N.D.M. takes several
medications, including prozac for depression, adderal for hyperactivity, and
zyprexa for improved mental health. Monica is currently unemployed, and her
ability to generate the financial resources necessary to meet the children’s
needs is doubtful.

          (3) The Emotional and Physical Danger to the Children Now and in the Future
The evidence shows that the children’s emotional and physical needs were
simply not met while they were in Monica’s care, and that Monica chooses
abusive boyfriends. There is little in the record to indicate that the danger to
the children has abated, although Monica has taken parenting classes and is no
longer living with a registered sex offender.

          (4) Monica’s Parenting Abilities
Monica successfully completed a parenting skills course and has expressed her
love for her children. At the outset, she refused to take her children to a shelter
because she wanted to protect them from drugs. However, O’Brien, the
TDPRS caseworker, testified that she did not believe Monica learned anything
from parenting classes or has accepted responsibility for the children’s poor
hygiene or exposure to adult sexual activity. She further testified that Monica
does not know how to properly care for, protect, or provide stability for the
children, and that the children would face the same dangers if returned to
Monica that they did when they were removed from her care.
 
(5) Programs Available to Assist Monica to Promote the Best Interest of the
Children
Monica has already been offered virtually every form of assistance from every
agency available to provide it, including classes, therapy, and assistance with
housing and employment, but has been unable to take advantage of it. Thus,
the likelihood of her being able to take advantage of these in the future is
doubtful.

          (6) The Plans for the Children
Monica plans to find a job, move her children into the housing she shares with
her friend Dorothy, and enroll the children in school; TDPRS plans to continue
the children’s current foster care placements.

          (7) The stability of the home or proposed placement
It is not possible from this record to speak to the stability of the Monica’s
proposed home for the children because it is a new environment, but in the
past, she has not stayed long in one place. In addition, the record reflects that
she knows neither the last name of the woman with whom she is living nor the
address. The children’s foster parents have expressed their desire to provide
care for the children indefinitely, but have also expressed their reservations if
Monica’s parental rights are not terminated because of the degree to which the
children respond negatively to visits with their mother. 
 
(8) Monica’s Acts or Omissions that may Indicate that the Existing Parent-
Child Relationship is not a Proper One
The record is replete with evidence indicating that Monica has not properly
supervised her children in the past, which has resulted in harm to them. She
also has not taken responsibility for her failings as a parent or indicated in what
manner she will alter her parenting to protect the children in the future. She
continues to break promises to her children and, even facing the threat of
termination of parental rights, has been unable to comply with the service plan
in the two most crucial areas—housing and employment.

          (9) Any Excuse for Monica’s Acts or Omissions
The record indicates that Monica’s own upbringing did not properly prepare
her for parenting, she is not particularly well educated, and she appears to have
difficulty maintaining a job. These disadvantages make it very difficult for her
to properly provide for the children, and her neglect may result from an
absence of resources rather than resulting from indifference.

          Aside from Monica’s testimony on her own behalf, there were no witnesses
called who could testify in support of her desire to retain her parental rights. In
contrast, Forde, Fuller, O’Brien, and the three foster mothers all testified
unequivocally that they believe termination is in the best interest of the children. The
foster mothers expressed their willingness to provide continued foster care to the
children, and TDPRS intends to maintain these placements. It is in a child’s best
interest to have continuity of care and caretaker. See Hann v. Tex. Dep’t of Protective
& Regulatory Servs., 969 S.W.2d 77, 83 (Tex. App.—El Paso 1998, pet. denied).
          In light of this record, we conclude the evidence was sufficiently clear and
convincing that a factfinder could reasonably form a firm belief that termination of
appellant’s parental rights was in the children’s best interest.
          We overrule issue three.
          We affirm the trial court’s decree.
 
 
                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Justices Taft, Keyes, and Higley.