NO. 07-08-0421-CV
 
IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 16, 2009
______________________________

IN THE INTEREST OF S.B.R., A CHILD
_________________________________

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 17,941; HONORABLE KEVIN C. HART, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Resa Gibson, appeals the termination of her parental rights to her minor
child, S.B.R.


 S.B.R. was born on March 23, 2007, and was ordered removed from Resa’s
care, after hearing, on April 5, 2007. The trial court entered an order terminating Resa’s
parental rights on October 10, 2008. It is from this order that Resa appeals.
Factual and Procedural Background
          On March 19, 2007, Resa went to the Brownfield Regional Medical Center in regard
to her pregnancy. While at the hospital, she took a drug screening test, which yielded a
negative result for drugs. Later that same day, Resa was sent to the Levelland Covenant
Hospital and another drug screening test was administered. The results of that test were
positive for marijuana. S.B.R. was born on March 23, 2007. The Texas Department of
Family and Protective Services (Department) received a report that Resa had given birth
on the 23rd of March and that she had been using drugs and had tested positive on a drug
screen.


 As a result of obtaining this information, the Department opened an investigation
on Resa. At the time the investigation was opened, Resa was thought to be residing with
her mother, Linda Roberts. On March 27, 2007, the Department interviewed Resa at her
mother’s home. After being told that she had tested positive for marijuana, Resa stated
that she had not smoked any marijuana but she had been in the presence of some people
who were smoking marijuana. Resa then stated that the second-hand marijuana smoke
could have accounted for her positive test. Resa was offered a drug test at that time but
refused. During this meeting with Resa, S.B.R. was being cared for by Linda and the
Department was not allowed in the Roberts’s house and the meeting ended without the
Department entering into the Roberts’s home or seeing S.B.R. 
          Subsequently, on March 29, 2007, the Department filed an original petition for
protection. After a hearing, the trial court granted temporary conservatorship to the
Department. The Department later filed an amended petition for termination and it was
upon this pleading that the case was subsequently tried.
          The record reflects that Resa had previously had a significant amount of contact
with the criminal justice system. Beginning with a possession of marijuana charge while
a juvenile, appellant had been charged and convicted as an adult of possession of cocaine,
aggravated perjury, and forgery.


 As a result of these multiple offenses, the record further
reflects that, as of the date of the trial, Resa had been in custody for all but one month of
S.B.R.’s life. Further, the record reflects that Resa had two other children before S.B.R.
was born and that these children had either been removed from the home by the
Department or voluntarily removed by agreement and/or voluntary relinquishment.
          At the time of trial, September 16, 2008, the Department’s live pleadings alleged
that termination was in the child’s best interest because Resa had committed the following
predicate acts or omissions set forth in Texas Family Code section 161.001(1), paragraphs
D, E, F, K, N, O, and P. See Tex. Fam. Code Ann. § 161.001(1) (Vernon 2007).


 After
hearing the testimony of the witnesses for the Department and the testimony of Resa, the
trial court entered an order terminating Resa’s parental rights by finding by clear and
convincing evidence that Resa had:
1) knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
child (§ 161.001(1)(D));
2) engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being
of the child (§ 161.001(1)(E));
3) failed to comply with the provisions of a court order that specifically
established the actions necessary for the mother to obtain the return of the
child who has been in permanent or temporary managing conservatorship
of the Department of Family and Protective Services for not less than nine
months as a result of the child’s removal from the parent under Chapter 262
for the abuse or neglect of the child (§ 161.001(1)(O)).
 
Additionally, as required by statute, the trial court found that termination was in the best
interest of the child. See § 161.001(2).
          Resa appeals the trial court’s judgment of termination contending that the evidence
was legally and factually insufficient to support the trial court’s judgment that she had
knowingly placed or allowed the child to remain in conditions or surroundings that
endangered his physical or emotional well-being (§ 161.001(1)(D)) and had knowingly
placed the child with a person, Linda Roberts, who engaged in conduct that endangered
his physical and emotional well-being (§ 161.001(1)(E)). Resa also contends that the
evidence is factually insufficient to support the trial court’s judgment that Resa had
engaged in conduct, namely using drugs and committing criminal acts that resulted in her
incarceration, that endangered the child’s physical and emotional well-being (§
161.001(1)(E)); that she failed to comply with a court order that specifically established the
actions necessary for her to obtain the child’s return (§ 161.001(1)(O)); and that termination
is in the best interest of the child (§ 161.001(2)). Disagreeing with some of Resa’s
contentions, we will affirm the trial court’s judgment of termination.



Standard of Review
Clear and Convincing Evidence
          The natural right existing between a parent and a child is of such a degree as to be
of constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388,
71 L.Ed.2d 599 (1982); Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). Because of
the nature of this right, a trial court’s findings in a termination case must be based upon
clear and convincing evidence. See § 161.001. Clear and convincing evidence is defined
as “. . . the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established.” See §
101.007. The clear and convincing burden of proof requires a higher level of appellate
scrutiny in reviewing the legal and factual sufficiency of the evidence. In re J.F.C., 96
S.W.3d 256, 265-66 (Tex. 2002) (legal sufficiency); In re C.H., 89 S.W.3d 17, 23 (Tex.
2002) (factual sufficiency).
Legal and Factual Sufficiency
          When reviewing a trial for legal sufficiency, a reviewing court must look at all the
evidence, in the light most favorable to the judgment, in order to determine whether the
trier of fact could reasonably have formed a firm belief or conviction about the truth of the
allegations lodged against the parent. See In re J.F.C., 96 S.W.3d at 265-66. Looking
at the evidence in the light most favorable to the judgment means that the reviewing court
must assume the fact finder resolved disputed fact issues in favor of its finding if a
reasonable fact finder could do so. Id. at 266. A reviewing court should disregard all
evidence that a reasonable fact finder could have disbelieved or found to have been
incredible. Id. This does not mean that a reviewing court should disregard all evidence
that does not support the finding, for to disregard undisputed facts that do not support the
finding could skew the analysis of whether there is clear and convincing evidence. Id. 
While conducting a legal sufficiency review, we are not allowed to weigh witness credibility
issues that depend on appearance and demeanor of witnesses, for those witnesses are
not present. See In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility
issues are reflected in the written transcript, an appellate court must defer to the fact
finder’s determinations, so long as those determinations are not themselves unreasonable. 
Id.
          When assessing the evidence for factual sufficiency, under a clear and convincing
burden of proof, we look at all the evidence the fact finder could reasonably have found to
be clear and convincing. We then determine whether, on the entire record, the fact finder
could have reasonably formed a firm belief or conviction of the truth of the allegations. See
In re S.M.L.D., 150 S.W.3d at 757. In performing this evaluation, we consider whether
disputed evidence is such that a reasonable fact finder could have resolved it in favor of
its finding. Id. If, in light of the entire record, disputed evidence that a reasonable fact
finder could not have resolved in favor of the finding is so significant as to prevent a fact
finder reasonably from forming a firm belief or conviction of the truth of the finding, then the
evidence is factually insufficient. Id. When conducting a factual sufficiency review, we
must give due deference to the fact finder’s findings and not supplant the fact finder’s
judgment with our own. See In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2005).
Section 161.001(1)(E) Allegations
          Resa contends, through her second and third issues, that the evidence is legally and
factually insufficient to support the trial court’s judgment that, either through placing the
child with Linda or by her own conduct, Resa engaged in conduct which violated section
161.001(1)(E). When reviewing an allegation that a parent has been guilty of engaging in
conduct or knowingly placing the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child, one of the first issues to
confront is the meaning of endanger. When examining the record for purposes of an
evidentiary review under section 161.001(1)(E), endanger has been determined to mean
to expose to loss or injury or to jeopardize. See In re M.C., 917 S.W.2d 268, 269 (Tex.
1996). Further, the courts have held that it is not necessary that the conduct be directed
at the child or that the child actually suffers injury or even that the conduct constitutes a
concrete threat of injury to the child. See In re M.J.M.L., 31 S.W.3d 347, 350
(Tex.App.–San Antonio 2000, pet. denied). The conduct proscribed involves not only acts,
but includes omissions or failures to act. Id. at 351. Endangerment does not have to be
established as an independent proposition but can be inferred from the parent’s conduct
alone. See Texas Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 
There is not a requirement of a causal connection between the parent’s misconduct and
any actual harm to the child resulting from that misconduct. See In re W.A.B., 979 S.W.2d
804, 808 (Tex.App.–Houston [14th Dist.] 1998, pet. ref’d), reversed on other grounds by,
In re J.F.C., 96 S.W.3d at 265-66. Texas courts may look at what the parents did both
before and after the child’s birth to determine whether termination is necessary. See In re
T.N., 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2005, no pet.). Imprisonment alone will not
support termination of a parent’s rights. See Boyd, 727 S.W.2d at 533. However, when
imprisonment is coupled with a course of conduct including drug abuse, there may be
support in finding that the parent engaged in a course of conduct which endangered the
child’s physical or emotional well-being. See In re K.C., 23 S.W.3d 604, 608
(Tex.App.–Beaumont 2000, no pet.). Conduct such as engaging in illegal activities
subjects a child to uncertainty and instability because of the probability that its parent will
be jailed thereby leaving the child alone and, as such, endangers the child’s physical or
emotional well-being. In re T.N., 180 S.W.3d at 383. 
Analysis
          The record reflects that, on the day the Department began actively investigating the
situation involving S.B.R., the case worker, then in charge, conducted an interview with
Resa outside her mother’s home. The case worker testified that, during that interview,
Resa admitted using cocaine until she found out she was pregnant. Upon further
examination, the case worker stated that Resa did not say that she stopped using cocaine
prior to becoming pregnant, rather Resa admitted using cocaine until she became 
personally aware that she was pregnant. During Resa’s testimony, she denied making the
statement. The record further reflects that Resa had been previously convicted of
possession of cocaine. In addition, the record reflects that Resa’s two older children had
been the subject of previous actions by the Department. In each case, the ultimate result
was that the child ended up being placed with and subsequently adopted by S.B.R.’s
current foster parents. Resa was given two drug tests on March 19, 2007. One test result
was negative for drug usage while the second was positive for marijuana. Resa’s
statement to the case worker about the positive test was that, although she had not
smoked marijuana, she could have tested positive because she was around people who
were smoking marijuana. The record reflects that Resa’s initial involvement with the law
as a juvenile was for possession of marijuana. Additionally, on the day Resa told the case
worker she had not smoked marijuana, she was offered a drug test and refused to take it. 
The record reflects that Resa has also been convicted of forgery and aggravated perjury. 
Resa’s entire criminal history occurred between 2002 and the birth of S.B.R., in March
2007. In fact, Resa testified, in October 2008, that she had been in the custody of the
State, in one form or another, for all but one month of S.B.R.’s life.
          Resa testified about the efforts she had made in changing her lifestyle. She had
completed one of the parenting courses that the Department had sent her. Resa had also
enrolled in and completed another parenting type course while at the SAFP facility. At the
time of trial, she was in a halfway house and had just obtained a job. Resa’s plans for her
son were to move either to Bryan, Texas or Fredericsksburg, Texas. Her logic was that
she needed to be out of her hometown because of her history of drug involvement. Yet,
when questioned further about her plans, Resa stated she still needed a few more months
before she would be prepared to care for the child.


 Resa contends that she did not finish
the service plan presented by the Department because she either had no ability to
complete the requirements while incarcerated or she had no postage with which to return
the materials furnished. At least one of the case workers testified that the materials she
sent to Resa included return envelopes with postage attached. 
          When we review this evidence in the light most favorable to the judgment, we
conclude that the evidence was such that the trier of fact could form a firm belief or
conviction about the truth of the allegations lodged against the parent. See In re J.F.C.,
96 S.W.3d at 265-66. Looking at the evidence in the light most favorable to the judgment
means that the reviewing court must assume the fact finder resolved disputed fact issues
in favor of its finding if a reasonable fact finder could do so. Id. at 266. The trial court
heard the conflicting testimony and was in the best position to judge the credibility of the
witnesses and we will not attempt to reweigh that evidence. See In re J.P.B., 180 S.W.3d
at 573. The trial court could simply have accepted the version of the facts presented by
the Department’s witnesses. We cannot say such a determination would be unreasonable. 
Id. While making this determination on credibility, the trial court had Resa’s refusal to take
a drug test to consider. It is not unreasonable for the trial court to take this refusal into
consideration in making a credibility determination. There is also the issue of all of Resa’s
activities prior to the birth of S.B.R. The trial court was entitled to consider that activity in
making its judgment. See In re T.N., 180 S.W.3d at 383. Finally, there was considerable
testimony about Resa’s criminal past. While imprisonment alone will not support
termination of a parent’s rights, see Boyd, 727 S.W.2d at 533, when imprisonment is
coupled with a course of conduct, as here, that includes drug usage, there is evidentiary
support for a decision to terminate. See In re K.C., 23 S.W.3d at 608. After considering
all of these factors, we overrule Resa’s challenge to the legal sufficiency of the evidence
to support the trial court’s judgment that she engaged in conduct which endangered the
physical or emotional well-being of the child. 
          As to the factual sufficiency challenge to the trial court’s judgment, our review leads
to the conclusion that, even when we view the evidence in a neutral light, the fact finder
could have reasonably formed a firm belief or conviction of the truth of the allegations. See
In re S.M.L.D., 150 S.W.3d at 757. However, we must give due deference to the fact
finder’s findings and not supplant the fact finder’s judgment with our own. See In re
H.R.M., 209 S.W.3d at 108. The entirety of this record demonstrates a failure on Resa’s
part to understand how her decisions had adverse effects on her child. The record clearly
demonstrates continuous involvement with the criminal justice system that resulted in little
or no stability in the home. See In re T.N., 180 S.W.3d at 383. Further, her use of drugs,
especially during her pregnancy, is an action that has an adverse affect on the physical
and emotional well-being of the child. See In re K.C., 23 S.W.3d at 608. Accordingly,
Resa’s factual sufficiency challenge to the trial court’s judgment that she engaged in
conduct which endangered the physical or emotional well-being of the child is overruled.
           When multiple grounds for termination are alleged, only one finding under section
161.001(1) is required to terminate parental rights. See In re T.N., 180 S.W.3d at 384. 
Having found that the evidence was both legally and factually sufficient to support the trial
court’s judgment as to termination, we need not address Resa’s issues regarding the other
grounds for termination found in the judgment. Id. Therefore, we next turn to the best
interest of the child. See § 161.001(2).
Best Interest of the Child
          Resa next contends that the evidence was factually insufficient to support the trial
court’s finding that termination was in the best interest of the child. This issue was not,
however, described as a possible point of error in her notice of appeal.


 The record
reflects that the notice of appeal contained six possible points that Resa was desiring to
appeal. None of the six could be read as contesting the factual sufficiency of the evidence
to support the decision that termination was in the child’s best interest. The requirement
of section 263.405(i) is that a party must include in a statement of points all issues that
they desire to appeal. See § 263.405(i). If an issue is not included, the appellate court
may not consider the issue. Id. Inasmuch as the issue was not listed on the statement of
points filed with the notice of appeal, nothing has been preserved for appeal. See In re
R.C., 243 S.W.3d 674, 676 (Tex.App.–Amarillo 2007, no pet.). Accordingly, we overrule
Resa’s fifth issue.
Conclusion
          Having determined that the evidence was legally and factually sufficient to support
termination on the basis that Resa engaged in conduct that endangered the physical and
emotional well-being of the child and that nothing was preserved for appeal as to the best
interest of the child, we affirm the judgment of the trial court.


                                                                                      Mackey K. Hancock

                                                                                                Justice