NO. 07-08-0313-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 4, 2009
                                       ______________________________

THE STATE OF TEXAS, APPELLANT

V.

LEE ANN LOVINGTON, APPELLEE
_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,854-A; HONORABLE HAL MINER, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          The State of Texas appeals the trial court’s ruling granting appellee’s motion to
suppress. We reverse and remand to the trial court for further proceedings consistent with
this judgment.
Background 
          On December 5, 2006, Amarillo police officers were attempting to execute an arrest
warrant. In their search for the suspect, two police officers, Marshall Wade Pennington
and Kyle Hawley saw a car parked near the apartment complex of the suspect’s girlfriend 
and went to speak to the two individuals in the car. The two individuals were Juan Daniel
Ramirez, the driver, and appellee, Lee Ann Lovington, the passenger. As Pennington and
Hawley neared the car, Pennington noticed Ramirez “messing around” in the center
console. As Pennington arrived at the car, Ramirez rolled down the window and positioned
himself, according to Pennington, to obstruct Pennington’s view into the car. At this time,
Pennington realized that neither occupant was the person subject to the arrest warrant. 
          As Pennington continued speaking with him, Ramirez switched his position again
and moved his leg, according to Pennington, as to hide something between the seat and
console. Pennington asked the driver for ID and, when Ramirez could not produce any ID,
asked Ramirez to step out of the car. As Ramirez stepped out, appellee laid a newspaper
over the console area. After Pennington handcuffed Ramirez for safety purposes,
Pennington had Hawley take Ramirez to the patrol car. Pennington stayed at the car and
removed the newspaper that appellee laid out and saw a handgun between the seat and
console area. Concurrent with Pennington’s observation, as Hawley took Ramirez to the
patrol car, Hawley asked Ramirez if there was anything illegal in the car. Ramirez
responded, “a gun.” Upon learning that a gun was located in the vehicle, Hawley placed
Ramirez in the patrol car and returned to the vehicle to search it, including appellee’s purse
located on the floorboard of the passenger side. Hawley “frisked” the purse for weapons
but instead found a set of scales. After asking appellee if he could continue to search the
purse, appellee answered yes and further directed Hawley to “stuff in the black bag.” 
Inside the purse, Hawley found a black bag containing marijuana and methamphetamine. 
Ramirez was arrested for unlawfully carrying a weapon and appellee was arrested for
possession of methamphetamine.
          At a suppression hearing, appellee contended that the trial court in this case was
collaterally estopped from admitting the evidence of the methamphetamine because
another trial court had held that the detention of Ramirez and subsequent search of the
vehicle was illegal and had suppressed the evidence. See State v. Ramirez, 246 S.W.3d
287 (Tex.App.–Amarillo 2008, no pet.). After hearing testimony on the issue, the trial court
ruled that the State was estopped from maintaining the lawfulness of the search and
seizure and suppressed the evidence seized during the search of Lovington’s purse. In
its findings of fact and conclusions of law, the trial court concluded that “[b]y operation of
either the ’law of the case’ or estoppel doctrines, this Court concludes that the officers’
continued detention . . . was unlawful.” Appealing the trial court’s suppression of the
evidence, the State contends that the trial court abused its discretion in suppressing the
evidence in light of the trial court’s own findings of fact and conclusions of law. We agree.
          Collateral estoppel applies when an issue of ultimate fact has been determined by
a valid and final judgment and that issue cannot again be litigated between the same
parties. See Murphy v. State, 239 S.W.3d 791, 794 (Tex.Crim.App. 2007). Collateral
estoppel deals only with specific factual determinations, not legal claims or legal
conclusions. Guajardo v. State, 109 S.W.3d 456, 460 (Tex.Crim.App. 2003). When the
sole witness at the motion to suppress hearing is the arresting officer and the trial court
files findings of fact and conclusions of law, the only question before us is whether the trial
court properly applied the law to the facts it found. See Ballman v. State, 157 S.W.3d 65,
69 (Tex.App.–Fort Worth 2004, pet. ref’d). Because the trial court entered findings of fact
and conclusions of law and because the trial court accepted virtually all of the officers’
testimony, we must give that court almost total deference in reviewing those historical facts
found but review de novo the application of the law to those facts. See id.
          In this case, we note that the findings of fact and conclusions of law made by the
trial court demonstrate that the trial court believed that 
[t]he Seventh Court of Appeals upheld [a previous] court’s
order suppressing evidence seized from Ramirez . . . .
Established, then, is the ‘law of the case’ that the seizure of
evidence respecting both defendants in the companion cases
was unlawful. The State is estopped from here maintaining the
lawfulness of the search and seizure. 
 
However, collateral estoppel does not apply because the parties differ in the companion
case. In the previous case, Ramirez was the person contesting the legality of the
continued detention. See Ramirez, 246 S.W.3d at 289. In this case, Lovington is the
party seeking to have the evidence suppressed. Furthermore, the determination of
whether the officer had reasonable suspicion to continue the encounter after Pennington
discovered that neither Ramirez or appellee were the subject of the arrest warrant is a legal
conclusion and, thus, not subject to collateral estoppel. See Guajardo, 109 S.W.3d at
460. Thus, the factual determinations made by the previous trial court in Ramirez apply
only to that case. Id. We hold that the trial court erred in ultimately concluding that the
State was estopped from maintaining the lawfulness of the search and seizure.
Conclusion
          For the foregoing reasons, we reverse the trial court’s order granting appellee’s
motion to suppress and remand to the trial court for further proceedings consistent with this
opinion.  
 
                                                                           Mackey K. Hancock

                                      Justice





Do not publish. 



Quinn, C.J., dissenting. 





   








er that specifically
established the actions necessary for the mother to obtain the return of the
child who has been in permanent or temporary managing conservatorship
of the Department of Family and Protective Services for not less than nine
months as a result of the child’s removal from the parent under Chapter 262
for the abuse or neglect of the child (§ 161.001(1)(O)).
 
Additionally, as required by statute, the trial court found that termination was in the best
interest of the child. See § 161.001(2).
          Resa appeals the trial court’s judgment of termination contending that the evidence
was legally and factually insufficient to support the trial court’s judgment that she had
knowingly placed or allowed the child to remain in conditions or surroundings that
endangered his physical or emotional well-being (§ 161.001(1)(D)) and had knowingly
placed the child with a person, Linda Roberts, who engaged in conduct that endangered
his physical and emotional well-being (§ 161.001(1)(E)). Resa also contends that the
evidence is factually insufficient to support the trial court’s judgment that Resa had
engaged in conduct, namely using drugs and committing criminal acts that resulted in her
incarceration, that endangered the child’s physical and emotional well-being (§
161.001(1)(E)); that she failed to comply with a court order that specifically established the
actions necessary for her to obtain the child’s return (§ 161.001(1)(O)); and that termination
is in the best interest of the child (§ 161.001(2)). Disagreeing with some of Resa’s
contentions, we will affirm the trial court’s judgment of termination.



Standard of Review
Clear and Convincing Evidence
          The natural right existing between a parent and a child is of such a degree as to be
of constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388,
71 L.Ed.2d 599 (1982); Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). Because of
the nature of this right, a trial court’s findings in a termination case must be based upon
clear and convincing evidence. See § 161.001. Clear and convincing evidence is defined
as “. . . the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established.” See §
101.007. The clear and convincing burden of proof requires a higher level of appellate
scrutiny in reviewing the legal and factual sufficiency of the evidence. In re J.F.C., 96
S.W.3d 256, 265-66 (Tex. 2002) (legal sufficiency); In re C.H., 89 S.W.3d 17, 23 (Tex.
2002) (factual sufficiency).
Legal and Factual Sufficiency
          When reviewing a trial for legal sufficiency, a reviewing court must look at all the
evidence, in the light most favorable to the judgment, in order to determine whether the
trier of fact could reasonably have formed a firm belief or conviction about the truth of the
allegations lodged against the parent. See In re J.F.C., 96 S.W.3d at 265-66. Looking
at the evidence in the light most favorable to the judgment means that the reviewing court
must assume the fact finder resolved disputed fact issues in favor of its finding if a
reasonable fact finder could do so. Id. at 266. A reviewing court should disregard all
evidence that a reasonable fact finder could have disbelieved or found to have been
incredible. Id. This does not mean that a reviewing court should disregard all evidence
that does not support the finding, for to disregard undisputed facts that do not support the
finding could skew the analysis of whether there is clear and convincing evidence. Id. 
While conducting a legal sufficiency review, we are not allowed to weigh witness credibility
issues that depend on appearance and demeanor of witnesses, for those witnesses are
not present. See In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility
issues are reflected in the written transcript, an appellate court must defer to the fact
finder’s determinations, so long as those determinations are not themselves unreasonable. 
Id.
          When assessing the evidence for factual sufficiency, under a clear and convincing
burden of proof, we look at all the evidence the fact finder could reasonably have found to
be clear and convincing. We then determine whether, on the entire record, the fact finder
could have reasonably formed a firm belief or conviction of the truth of the allegations. See
In re S.M.L.D., 150 S.W.3d at 757. In performing this evaluation, we consider whether
disputed evidence is such that a reasonable fact finder could have resolved it in favor of
its finding. Id. If, in light of the entire record, disputed evidence that a reasonable fact
finder could not have resolved in favor of the finding is so significant as to prevent a fact
finder reasonably from forming a firm belief or conviction of the truth of the finding, then the
evidence is factually insufficient. Id. When conducting a factual sufficiency review, we
must give due deference to the fact finder’s findings and not supplant the fact finder’s
judgment with our own. See In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2005).
Section 161.001(1)(E) Allegations
          Resa contends, through her second and third issues, that the evidence is legally and
factually insufficient to support the trial court’s judgment that, either through placing the
child with Linda or by her own conduct, Resa engaged in conduct which violated section
161.001(1)(E). When reviewing an allegation that a parent has been guilty of engaging in
conduct or knowingly placing the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child, one of the first issues to
confront is the meaning of endanger. When examining the record for purposes of an
evidentiary review under section 161.001(1)(E), endanger has been determined to mean
to expose to loss or injury or to jeopardize. See In re M.C., 917 S.W.2d 268, 269 (Tex.
1996). Further, the courts have held that it is not necessary that the conduct be directed
at the child or that the child actually suffers injury or even that the conduct constitutes a
concrete threat of injury to the child. See In re M.J.M.L., 31 S.W.3d 347, 350
(Tex.App.–San Antonio 2000, pet. denied). The conduct proscribed involves not only acts,
but includes omissions or failures to act. Id. at 351. Endangerment does not have to be
established as an independent proposition but can be inferred from the parent’s conduct
alone. See Texas Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 
There is not a requirement of a causal connection between the parent’s misconduct and
any actual harm to the child resulting from that misconduct. See In re W.A.B., 979 S.W.2d
804, 808 (Tex.App.–Houston [14th Dist.] 1998, pet. ref’d), reversed on other grounds by,
In re J.F.C., 96 S.W.3d at 265-66. Texas courts may look at what the parents did both
before and after the child’s birth to determine whether termination is necessary. See In re
T.N., 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2005, no pet.). Imprisonment alone will not
support termination of a parent’s rights. See Boyd, 727 S.W.2d at 533. However, when
imprisonment is coupled with a course of conduct including drug abuse, there may be
support in finding that the parent engaged in a course of conduct which endangered the
child’s physical or emotional well-being. See In re K.C., 23 S.W.3d 604, 608
(Tex.App.–Beaumont 2000, no pet.). Conduct such as engaging in illegal activities
subjects a child to uncertainty and instability because of the probability that its parent will
be jailed thereby leaving the child alone and, as such, endangers the child’s physical or
emotional well-being. In re T.N., 180 S.W.3d at 383. 
Analysis
          The record reflects that, on the day the Department began actively investigating the
situation involving S.B.R., the case worker, then in charge, conducted an interview with
Resa outside her mother’s home. The case worker testified that, during that interview,
Resa admitted using cocaine until she found out she was pregnant. Upon further
examination, the case worker stated that Resa did not say that she stopped using cocaine
prior to becoming pregnant, rather Resa admitted using cocaine until she became 
personally aware that she was pregnant. During Resa’s testimony, she denied making the
statement. The record further reflects that Resa had been previously convicted of
possession of cocaine. In addition, the record reflects that Resa’s two older children had
been the subject of previous actions by the Department. In each case, the ultimate result
was that the child ended up being placed with and subsequently adopted by S.B.R.’s
current foster parents. Resa was given two drug tests on March 19, 2007. One test result
was negative for drug usage while the second was positive for marijuana. Resa’s
statement to the case worker about the positive test was that, although she had not
smoked marijuana, she could have tested positive because she was around people who
were smoking marijuana. The record reflects that Resa’s initial involvement with the law
as a juvenile was for possession of marijuana. Additionally, on the day Resa told the case
worker she had not smoked marijuana, she was offered a drug test and refused to take it. 
The record reflects that Resa has also been convicted of forgery and aggravated perjury. 
Resa’s entire criminal history occurred between 2002 and the birth of S.B.R., in March
2007. In fact, Resa testified, in October 2008, that she had been in the custody of the
State, in one form or another, for all but one month of S.B.R.’s life.
          Resa testified about the efforts she had made in changing her lifestyle. She had
completed one of the parenting courses that the Department had sent her. Resa had also
enrolled in and completed another parenting type course while at the SAFP facility. At the
time of trial, she was in a halfway house and had just obtained a job. Resa’s plans for her
son were to move either to Bryan, Texas or Fredericsksburg, Texas. Her logic was that
she needed to be out of her hometown because of her history of drug involvement. Yet,
when questioned further about her plans, Resa stated she still needed a few more months
before she would be prepared to care for the child.


 Resa contends that she did not finish
the service plan presented by the Department because she either had no ability to
complete the requirements while incarcerated or she had no postage with which to return
the materials furnished. At least one of the case workers testified that the materials she
sent to Resa included return envelopes with postage attached. 
          When we review this evidence in the light most favorable to the judgment, we
conclude that the evidence was such that the trier of fact could form a firm belief or
conviction about the truth of the allegations lodged against the parent. See In re J.F.C.,
96 S.W.3d at 265-66. Looking at the evidence in the light most favorable to the judgment
means that the reviewing court must assume the fact finder resolved disputed fact issues
in favor of its finding if a reasonable fact finder could do so. Id. at 266. The trial court
heard the conflicting testimony and was in the best position to judge the credibility of the
witnesses and we will not attempt to reweigh that evidence. See In re J.P.B., 180 S.W.3d
at 573. The trial court could simply have accepted the version of the facts presented by
the Department’s witnesses. We cannot say such a determination would be unreasonable. 
Id. While making this determination on credibility, the trial court had Resa’s refusal to take
a drug test to consider. It is not unreasonable for the trial court to take this refusal into
consideration in making a credibility determination. There is also the issue of all of Resa’s
activities prior to the birth of S.B.R. The trial court was entitled to consider that activity in
making its judgment. See In re T.N., 180 S.W.3d at 383. Finally, there was considerable
testimony about Resa’s criminal past. While imprisonment alone will not support
termination of a parent’s rights, see Boyd, 727 S.W.2d at 533, when imprisonment is
coupled with a course of conduct, as here, that includes drug usage, there is evidentiary
support for a decision to terminate. See In re K.C., 23 S.W.3d at 608. After considering
all of these factors, we overrule Resa’s challenge to the legal sufficiency of the evidence
to support the trial court’s judgment that she engaged in conduct which endangered the
physical or emotional well-being of the child. 
          As to the factual sufficiency challenge to the trial court’s judgment, our review leads
to the conclusion that, even when we view the evidence in a neutral light, the fact finder
could have reasonably formed a firm belief or conviction of the truth of the allegations. See
In re S.M.L.D., 150 S.W.3d at 757. However, we must give due deference to the fact
finder’s findings and not supplant the fact finder’s judgment with our own. See In re
H.R.M., 209 S.W.3d at 108. The entirety of this record demonstrates a failure on Resa’s
part to understand how her decisions had adverse effects on her child. The record clearly
demonstrates continuous involvement with the criminal justice system that resulted in little
or no stability in the home. See In re T.N., 180 S.W.3d at 383. Further, her use of drugs,
especially during her pregnancy, is an action that has an adverse affect on the physical
and emotional well-being of the child. See In re K.C., 23 S.W.3d at 608. Accordingly,
Resa’s factual sufficiency challenge to the trial court’s judgment that she engaged in
conduct which endangered the physical or emotional well-being of the child is overruled.
           When multiple grounds for termination are alleged, only one finding under section
161.001(1) is required to terminate parental rights. See In re T.N., 180 S.W.3d at 384. 
Having found that the evidence was both legally and factually sufficient to support the trial
court’s judgment as to termination, we need not address Resa’s issues regarding the other
grounds for termination found in the judgment. Id. Therefore, we next turn to the best
interest of the child. See § 161.001(2).
Best Interest of the Child
          Resa next contends that the evidence was factually insufficient to support the trial
court’s finding that termination was in the best interest of the child. This issue was not,
however, described as a possible point of error in her notice of appeal.


 The record
reflects that the notice of appeal contained six possible points that Resa was desiring to
appeal. None of the six could be read as contesting the factual sufficiency of the evidence
to support the decision that termination was in the child’s best interest. The requirement
of section 263.405(i) is that a party must include in a statement of points all issues that
they desire to appeal. See § 263.405(i). If an issue is not included, the appellate court
may not consider the issue. Id. Inasmuch as the issue was not listed on the statement of
points filed with the notice of appeal, nothing has been preserved for appeal. See In re
R.C., 243 S.W.3d 674, 676 (Tex.App.–Amarillo 2007, no pet.). Accordingly, we overrule
Resa’s fifth issue.
Conclusion
          Having determined that the evidence was legally and factually sufficient to support
termination on the basis that Resa engaged in conduct that endangered the physical and
emotional well-being of the child and that nothing was preserved for appeal as to the best
interest of the child, we affirm the judgment of the trial court.


                                                                                      Mackey K. Hancock

                                                                                                Justice