In the Interest of B.R., a Child.

No. 08–96–00230–CV

Court of Appeals of Texas,
El Paso.

May 8, 1997.

J. Devin Alsup, Kerr & Ward, L.L.P., Midland, for Appellant.

James H. Eubank, Midland, for Appellee.

J. K. 'Rusty' Wall, Law Office of J. K. Rusty Wall, Midland, Attorney Ad Litem.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

In two points of error, Appellant, the father of B.R., complains of a decree terminating his parental rights and granting the petition for adoption filed by the child's maternal grandparents. First, he alleges that he was denied reasonable access to his court-appointed attorney ad litem. Second, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that he engaged in conduct that endangered the physical or emotional well-being of his son. We affirm.

## FACTUAL SUMMARY

On March 19, 1992, Appellant was indicted for the shotgun slaying of his wife, Angela. The couple had one child who was almost eleven months old at the time of the murder. Angela was pregnant with a second child at the time of her death. On August 7, 1992, Angela's parents filed a petition to terminate Appellant's parental rights and to adopt their grandchild. On September 11, 1992, a jury convicted Appellant of murder and sentenced him to life imprisonment. This Court affirmed Appellant's conviction in an unpublished opinion on March 30, 1994; our mandate issued on October 18, 1995. Following a non-jury trial held on January 11, 1996, the trial court found that Appellant had engaged in conduct that endangered the physical or emotional well-being of the child and that termination was in the child's best interest. The court also found that adoption by the grandparents was in the best interest of the child. This appeal follows.

## DENIAL OF REASONABLE ACCESS TO ATTORNEY AD LITEM

In Point of Error No. One, Appellant alleges that he was denied reasonable access to his court-appointed attorney ad litem in violation of Section 107.013 of the Texas Family Code.[1] In early October of 1992 following Appellant's conviction, the trial court appointed an attorney ad litem to represent him in the termination proceeding. Appellant was then in custody in the Midland

1. Appellant actually frames his point of error in terms of former Section 11.10(d) of the Family Code. Effective September 1, 1995, the Legislature re-codified the Family Code by reenacting Title 2 and adding Title 5. Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Gen.Laws 113. Section 11.10(d) was reenacted as Tex.Fam.Code Ann. § 107.013 (Vernon 1996). Acts 1995, 74th Leg., R.S., ch. 751, § 15, 1995 Tex.Gen.Laws 3893, 3894. Although Section 11.10(d) was in effect at the time counsel was appointed to represent Appellant, Section 107.013 applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of the amending Act. Acts 1995, 74th Leg., R.S., ch. 751, § 129, 1995 Tex.Gen.Laws 3933. Therefore, we will construe Appellant's point of error as directed at Section 107.013.

County Jail where he remained until January 24 or 25, 1994 when he was transferred to the Institutional Division of the Texas Department of Criminal Justice (TDCJID). Prior to the January 11, 1996 setting, this case had been set for trial on various dates in 1993 and 1994. The trial court issued a bench warrant for Appellant on January 5, 1996, and he was brought back to the Midland County Jail late on the evening of January 10, 1996. The following morning, he conferred in person with his attorney for approximately an hour and a half before trial. After the case was called for trial, Appellant made an oral motion for continuance on the ground that he had not had sufficient time to obtain the presence of witnesses or consult in person with his attorney because he was not brought in from TDCJID until the night before trial. Appellant testified that between January 1994 and January 1996, his only method of communicating with his attorney was by mail. Neither Appellant nor counsel ever complained prior to the January 11 setting that they did not have sufficient access to one another or that counsel had been unable to prepare for trial as a result. The trial court denied the motion for continuance.

Appellant does not challenge the trial court's denial of his oral motion for continuance. Instead, he argues that the court violated Section 107.013 of the Texas Family Code by denying him reasonable access to his attorney prior to trial. The pertinent portion of Section 107.013 provides:

(a) In a suit in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of each indigent parent of the child who responds in opposition to the termination.

TEX.FAM.CODE ANN. § 107.013(a)(Vernon 1996).

The predecessor to Section 107.013(a) has been interpreted as imposing a mandatory duty upon the trial court to appoint an attorney ad litem to represent an indigent parent

in a termination suit. *Odoms v. Batts,* 791 S.W.2d 677, 678 (Tex.App.—San Antonio 1990, no writ)[discussing Section 11.10(d) ]; *see Ybarra v. Texas Department of Human Services,* 869 S.W.2d 574, 580 (Tex.App.— Corpus Christi 1993, no writ). Appellant argues that Section 107.013(a) should also be interpreted as requiring a trial court to afford the indigent parent with reasonable access to the attorney ad litem and to provide the attorney with an ample opportunity to confer with the client and prepare for trial. He cites no authority directly in support of his contention that Section 107.013(a) requires a trial court to, on its own motion, take affirmative steps to ensure that the indigent parent and counsel have reasonable access to one another. Regardless, we need not decide this question because the record does not substantiate Appellant's claim that he was denied reasonable access to counsel or that counsel did not have an adequate opportunity to confer with him to prepare for trial.

The attorney-client relationship between Appellant and the ad litem had existed for more than three years at the time of trial. While Appellant was in the Midland County Jail from October 1992 until January 1994, this case was set for trial on several occasions. There is no evidence that counsel, whose office is in Midland, was unable to consult with Appellant in person or prepare for trial during that time period. After Appellant's transfer to TDCJID in late January of 1994, counsel was able to communicate with Appellant by mail. Again, there is no evidence that counsel was unable to effectively communicate with his client during this time period. Point of Error No. One is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ Section 161.001 of the Texas Family Code sets forth the grounds upon which the court may involuntarily terminate a parent-child relationship. TEX.FAM.CODE ANN. § 161.001 (Vernon 1996).[2] Pertinent to this

2. Effective September 1, 1995, the Legislature re-codified the Family Code by reenacting Title 2 and adding Title 5. Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 TEX.GEN.LAWS 113. Section

15.02 was reenacted as TEX.FAM.CODE ANN. § 161.001 (Vernon 1996). Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 TEX.GEN.LAWS 113, 212–13, *amended by* Acts 1995, 74th Leg., R.S., ch. 709,

appeal, Section 161.001(1)(E) allows termination if the parent has:

> [E]ngaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

TEX.FAM.CODE ANN. § 161.001(1)(E). In addition to establishing one or more of the grounds under Section 161.001(1), the petitioner must also establish that termination is in the best interest of the child. TEX.FAM. CODE ANN § 161.001(2). Both of these elements must be established by clear and convincing evidence. TEX.FAM.CODE ANN. § 161.001; *see Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985); *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *Smith v. Sims*, 801 S.W.2d 247, 250 (Tex.App.—Houston [14th Dist.] 1990, no writ). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX.FAM.CODE ANN. § 101.007; *see In the Interest of G.M.*, 596 S.W.2d at 847; *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979); *Sims*, 801 S.W.2d at 250. It is an intermediate standard of proof, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Addington*, 588 S.W.2d at 570; *Sims*, 801 S.W.2d at 250.

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that he engaged in conduct that endangered the physical or emotional well-being of the minor child.[3] He does not challenge the finding that termination of his parental rights is in the child's best interest.

*Standard of Review*

Because this case involves an elevated standard of proof in the trial court, we must initially address whether we apply a heightened standard of review in this Court. Stated simply, the question is whether evidence sufficient to support a fact-finding by a preponderance of the evidence is equally sufficient to support a fact-finding by clear and convincing evidence. Because we believe the traditional factual sufficiency review is inapplicable to an enhanced burden of proof, we answer this question in the negative and conclude that a stricter scrutiny is required.

The Dallas Court of Appeals first held in 1982 that factual sufficiency review of a finding where the burden of proof at trial was clear and convincing evidence requires a more stringent standard of review than ordinary factual sufficiency review. *Neiswander v. Bailey*, 645 S.W.2d 835, 835–36 (Tex. App.—Dallas 1982, no writ). The *Neiswander* Court relied on authority from other jurisdictions and the common sense notion that a higher burden of proof necessitated a stricter standard of review. It held that it is the duty of the appellate court in reviewing the evidence to determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. *Neiswander*, 645 S.W.2d at 836. Other courts of appeals adopted this standard. *See e.g., Ybarra*, 869 S.W.2d at 580; *Neal v. Texas Department of Human Services*, 814 S.W.2d 216, 222 (Tex.App.—San Antonio 1991, writ denied); *Williams v. Texas Department of Human Services*, 788 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1990, no writ); *In the Interest of L.R.M. and J.J.M.*, 763 S.W.2d 64, 66 (Tex.App.—Fort

---

§ 1, 1995 TEX.GEN.LAWS 3745, *amended by* 1995 TEX.GEN.LAWS 3745, Acts 1995, 74th Leg., R.S., ch. 751, § 65, 1995 TEX.GEN.LAWS 3910–11. Although Section 15.02 was in effect at the time the grandparents filed their petition to terminate, Section 161.001 applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of the amending Act. Acts 1995, 74th Leg., R.S., ch. 751, § 129, 1995 TEX.GEN.LAWS 3933.

3. Appellant does not clearly indicate in his brief whether he seeks a review of the legal or factual sufficiency of the evidence, or both. In light of the substantial constitutional protections involved in an involuntary termination of parental rights, we will liberally construe his point of error as directed at both legal and factual sufficiency of the evidence.

Worth 1989, no writ); *Wetzel v. Wetzel,* 715 S.W.2d 387, 389 (Tex.App.—Dallas 1986, no writ); *see also In the Matter of the Estate of Glover,* 744 S.W.2d 197, 199 (Tex.App.—Amarillo 1987)(discussing the higher standard of review in dicta), *writ denied per curiam,* 744 S.W.2d 939 (Tex.1988). Still other opinions reference the clear and convincing burden of proof at trial with the factual sufficiency standard of review in a fashion that indicated a stricter review than the traditional factual sufficiency review. *Doria v. Texas Department of Human Resources,* 747 S.W.2d 953, 959 (Tex.App.—Corpus Christi 1988, no writ); *G.M. v. Texas Department of Human Resources,* 717 S.W.2d 185, 186 (Tex.App.—Austin 1986, no writ); *Baxter v. Texas Department of Human Resources,* 678 S.W.2d 265, 267 (Tex.App.—Austin 1984, no writ). These cases all suggest that there is a distinction between the sufficiency of the evidence required to support a finding by a preponderance of the evidence and the sufficiency of the evidence necessary for a finding by clear and convincing evidence.

Although the First and Fifth Courts of Appeals continue to apply a higher standard of review when the burden of proof at trial is by clear and convincing evidence,[4] some courts of appeals have recently backed away from application of a stricter standard. *In the Interest of J.J. and K.J.,* 911 S.W.2d 437, 439–40 (Tex.App.—Texarkana 1995, writ denied); *In the Interest of W.S., R.S., and A.S.,* 899 S.W.2d 772, 776 (Tex.App.—Fort Worth 1995, no writ); *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 843, n. 2 (Tex.App.—Fort Worth 1995, no writ); *In the Interest of A.D.E.,* 880 S.W.2d 241, 245 (Tex.App.—Corpus Christi 1994, no writ); *Oadra v. Stegall,* 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ); *D.O. v. Texas Department of Human Services,* 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ). These decisions rely primarily upon *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975) and *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977). As noted by the Texarkana Court of Appeals in its decision rejecting an intermediate standard of review but inviting

further consideration of this issue by the Supreme Court, *Meadows* was decided at a time when the Supreme Court disapproved of an intermediate standard of proof at the trial level. *In the Interest of J.J. and K.J.,* 911 S.W.2d at 440 n. 1, *citing Turner,* 556 S.W.2d at 565 (the rule requiring clear and convincing evidence is merely another method of requiring that a cause of action be supported by factually sufficient evidence; in practical effect it is but an admonition to the judge to exercise great caution in weighing the evidence; no doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence, and special issues requiring a higher degree of proof than a preponderance of the evidence may not be submitted to a jury); *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209–10 (1950)(under blended system of law and equity, rule requiring that facts be established by clear and convincing evidence in practical effect is but an admonition to the judge to exercise great caution in weighing the evidence). In the absence of an intermediate standard of proof, rejection of an intermediate standard of review made sense. Since the Supreme Court has since approved the use of the clear and convincing standard of proof at the trial level in certain types of cases, including termination cases, we find reliance upon *Meadows* and *Turner* questionable. *See In the Interest of G.M.,* 596 S.W.2d 846 (Tex.1980)(clear and convincing evidence required in proceedings for involuntary termination of parental rights); *Addington,* 588 S.W.2d at 570 (recognizing the clear and convincing evidence standard of proof; requiring it to be applied in civil commitment proceedings).

Like the Dallas Court of Appeals in *Neiswander,* we find it incongruous to require the trial court to apply an enhanced burden of proof when deciding the issues while requiring the appellate court to apply the standard of review accorded to issues decided by a preponderance of the evidence. Accordingly, where the burden of proof at trial is by clear and convincing evidence, we

---

4. *See Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Upjohn* *Co. v. Freeman,* 847 S.W.2d 589, 591 (Tex.App.—Dallas 1992, no writ).

will apply the higher standard of factual sufficiency review first articulated in *Neiswander*. After considering all of the evidence, we must determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable.[5] Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. *Mezick*, 920 S.W.2d at 430; *In the Interest of P.S. and L.S.*, 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ). We will sustain an insufficient evidence point of error only "if the fact finder could not have reasonably found the fact was established by clear and convincing evidence." *Mezick*, 920 S.W.2d at 430, *quoting Williams*, 788 S.W.2d at 926.

### Legal Sufficiency

■ Regardless of the burden of proof involved, the application of this stricter standard is still construed as a purely factual sufficiency challenge. A legal sufficiency challenge to a fact-finding requiring clear and convincing evidence does not mandate an alteration in the standard of review. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the challenged finding and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). If any probative evidence supports the fact finder's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Parallax Corp.*, 910 S.W.2d at 89.

■ Appellant's entire sufficiency argument centers around his assertion that there is no evidence showing that his conduct had an adverse effect upon the child. He takes the position that the child must either have been exposed to the conduct in question or that the effect of the conduct be manifested by the child's behavior or demeanor. We disagree. Contrary to his view of Section 161.001(1)(E), the statute does not require a showing that a parent's conduct caused an actual adverse effect upon the child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987)("While we agree that 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury."). Rather, it is sufficient that the child's well-being be jeopardized or exposed to loss or injury. *In the Interest of J.J. and K.J.*, 911 S.W.2d at 440, *citing Boyd*, 727 S.W.2d at 533; *Director of Dallas County Child Protective Services Unit of Texas Department of Human Services v. Bowling*, 833 S.W.2d 730, 732–33 (Tex.App.—Dallas 1992, no writ). Further, the specific danger to the child's well-being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *In the Interest of J.J. and K.J.*, 911 S.W.2d at 440, *citing Boyd*, 727 S.W.2d at 533. Evidence of a parent's imprisonment may contribute to a finding that the parent engaged in a course of conduct which endangered a child's physical or emotional well-being. *Id.; Harris v. Herbers*, 838 S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1992, no writ). Violent or negligent conduct directed at the other parent or other children,[6] even though not committed in the child's presence, may also be sufficient to demonstrate a course of conduct under Section 161.001(1)(E). *See In the Interest of B.J.B. and C.E.B.*, 546 S.W.2d 674, 677 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.)("[T]he father's demonstrated want of self control and propensity for aggression and vicious, cruel, brutal violence against [the mother] who did not conform to

---

5. As noted by the Fort Worth Court of Appeals in its decision originally adopting the higher standard of review, the phrase "highly probable" is merely a synonym for "clear and convincing." *In the Interest of L.R.M. and J.J.M.*, 763 S.W.2d at 66; *Neiswander*, 645 S.W.2d at 835–36.

6. Although the record does not reflect the duration of the pregnancy or the viability of the fetus, we reiterate here that Angela was pregnant at the time of her death.

his will projected a threat that might reasonably be construed as endangering the physical well-being of children"); *Bowling,* 833 S.W.2d at 733 (and cases cited therein)[discussing Section 15.02(1)(E) ].

Appellant and his wife were separated during her first pregnancy, but reunited when their child was born on April 5, 1991. Appellant physically abused Angela while they lived together. After one fight, Appellant left Midland and took the baby to El Paso without Angela's consent. The record does not reflect how long Appellant and the child remained in El Paso or when they returned to Midland. At some point during this period, Appellant admittedly engaged in sexual intercourse with his girlfriend in the marital home while the child was present. He videotaped the event and left the tape in the house where it was discovered.[7] In November of 1991, Angela and the baby separated from Appellant and moved in with the grandparents. Angela filed a petition for divorce and obtained a protective order against Appellant. Despite the protective order, Appellant gunned her down in February 1992. Appellant has been in custody continuously since his murder conviction in September 1992. While in jail, Appellant committed the offense of "destruction of state property" and was assessed a five-year sentence which will run consecutively with his life sentence. Appellant admitted during his testimony that he had abused alcohol, cocaine, and marijuana and had attempted suicide on "quite a few" occasions. He also admitted that he had an extensive criminal background.

We conclude that sufficient evidence supports the trial court's finding that Appellant engaged in a course of conduct which endangered the child's well-being. *See In the Interest of J.J. and K.J.,* 911 S.W.2d at 440 (father's spousal abuse and drug abuse while in his children's presence and his repeated

instances of imprisonment constitutes sufficient evidence to support the trial court's finding that father had endangered children's well-being); *Bowling,* 833 S.W.2d at 733–34 (evidence sufficient to support termination of father's parental rights to son and daughter where father sexually abused another child, and father disregarded conditions of probation thereby exposing himself to revocation and imprisonment when he knew that his confinement would leave children with mother who would not care for them); *Sims,* 801 S.W.2d at 250–51 (evidence that father murdered mother of his children, took children hostage for three days, and received a life sentence is sufficient to support a finding that father endangered children's well-being). Here, Judge Rucker noted that "[b]y his conduct, [Appellant] has forever taken from [B.R.] the comfort, warmth, care and nurturing of his mother's love. Surely, the murder of a parent by the other is, in and of itself, an act that constitutes endangerment of a child, without the need of showing harm to the child." The San Antonio Court of Appeals has, in dicta,[8] also professed that "surely a final conviction for the murder of the mother of the child would constitute the conduct described" in former Section 15.02(E). *In the Interest of S.K.S.,* 648 S.W.2d 402, 404 (Tex.App.—San Antonio 1983, no writ). We agree with both statements. Indeed, our conclusion stems directly from the Supreme Court's determination that to "endanger" a child is to expose the child to loss, here the loss of his mother. *Boyd,* 727 S.W.2d at 533. Appellant's legal sufficiency challenge is overruled.

### Factual Sufficiency

 Even applying the heightened standard of review which we have adopted, a factual sufficiency point requires us to exam-

---

7. The videotape was not introduced into evidence. Despite repeated questioning as to whether the tape reflected that the child was crying during Appellant's liaison, Appellant responded: "All I can answer is that the child was present. As to his crying, I do not know of that fact." In an impeachment attempt, counsel asked Appellant to read from his testimony during the murder trial: "I quote Al Schorre: 'In the background, you heard [B.R.], who was an

infant at the time, would cry periodically during your relations—sexual relations with Ms. Contreras; is that correct?' Response: 'If that's the way it occurred on the videotape, yes.' "

8. The murder conviction was on appeal and not final at the time of the termination proceeding. The court upheld the termination on other grounds.

ine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Parallax Corp., N.V. v. City of El Paso,* 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied); *Tseo v. Midland American Bank,* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied). The reviewing court cannot substitute its conclusions for those of the fact finder. *Parallax Corp.,* 910 S.W.2d at 89. If sufficient competent evidence of probative force exists to support the finding, it must be sustained. *Parallax Corp.,* 910 S.W.2d at 89; *Tseo,* 893 S.W.2d at 26; *Texas Tech University Health Sciences Center v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.—El Paso, writ denied). We may not interfere with the fact finder's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Parallax Corp.,* 910 S.W.2d at 90; *Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied). Where conflicting evidence is present, the fact finder's determination on such matters is generally regarded as conclusive. *Parallax Corp.,* 910 S.W.2d at 90; *Tseo,* 893 S.W.2d at 26.

At trial, Appellant freely admitted that he had an extensive criminal background, substance abuse problems, and had attempted suicide. He did not deny that he had physically abused his wife. Although he attempted to avoid answering any questions regarding the murder, he admitted that he had testified during the murder trial that he shot his wife with a shotgun. The evidence showing that Appellant abused and eventually murdered the child's mother, abused alcohol and drugs, attempted or threatened suicide on numerous occasions, and will be imprisoned for a substantial period of time is sufficient to produce in the mind of the fact finder a firm belief or conviction that Appellant engaged in a course of conduct which endangered the child's well-being. *See In the Interest of J.J. and K.J.,* 911 S.W.2d at 440; *Bowling,* 833 S.W.2d at 733–34; *Sims,* 801 S.W.2d at 250–51. We further conclude that the fact finder could have reasonably found that the statutory basis for termination was estab-

lished by clear and convincing evidence. *Mezick,* 920 S.W.2d at 430, *quoting Williams,* 788 S.W.2d at 926. Accordingly, the evidence is factually sufficient. Point of Error No. Two is overruled. We affirm the termination and adoption.