

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00186-CV

**IN THE INTEREST OF D.B AND K.B., CHILDREN**

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 74,379-L1, Honorable James W. Anderson, Presiding

December 10, 2020

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

In this accelerated appeal, appellant, Father, seeks reversal of the trial court's judgment terminating his parental rights to D.B. and K.B.[1] In his sole issue, Father asserts that the evidence is insufficient to support the trial court's predicate findings for termination. Finding no error, we affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we refer to the children by initials and to the parents of the children as "Mother" and "Father." *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b).

Background

In July 2018, the Texas Department of Family and Protective Services filed its petition for protection, conservatorship, and termination of parental rights of Mother and Father as to their children, D.B., four years old, and K.B., three years old.[2]  D.B. and K.B. were removed from the care of Mother and her boyfriend after the Department received a referral alleging drug use around the children.  The Department also investigated allegations that Mother, her boyfriend, and the children lived with another family in a home that was infested with roaches and bed bugs.  As a part of the investigation, Mother and her boyfriend submitted to drug screens which were positive for methamphetamine.  K.B. also tested positive for methamphetamine.

At the time that D.B. and K.B. were removed from Mother's care, Father was incarcerated for the felony offense of burglary of a habitation.  According to Mother, Father was incarcerated for a probation violation when K.B. was born.  Father did not have regular contact with D.B. and K.B. prior to his incarceration.

The Department developed a family service plan for Father which set out several tasks and services for Father to complete before reunification with D.B. and K.B. could occur.  These tasks and services included the following: complete a psychological evaluation and follow recommendations; maintain regular contact with his caseworker; abstain from the use of illegal drugs; submit to random drug screens; locate and maintain stable housing that is free from drugs and violence; locate and maintain stable

[2] Mother is not a party to this appeal.

2

employment; complete a psychosocial assessment and follow recommendations; attend individual counseling; take parenting classes; participate in rational behavior therapy; and participate in a drug and alcohol assessment. The court ordered compliance with the plan requirements at a status hearing. Father completed three classes offered to him while he was incarcerated.

On June 10, 2019, Father was released on parole. As a condition of parole, Father was required to participate in weekly urinalysis drug screenings. Father's service plan also required him to submit to drug screens. A Department caseworker testified that Father submitted to two drug screens requested by the Department, but that Father refused to submit to a drug screen in September because he stated that he used methamphetamine the previous weekend. Other than the three classes, Father did not complete any other tasks or services required by his family service plan. The Department also presented testimony that Father was arrested in June and October of 2019 while the case was pending.

The Department supervisor, Stacey Norton, testified that Father "has never had a relationship with K.B." and that he was not having contact with the children prior to their removal. After Father was released from prison, he requested to have contact with D.B. and K.B., but that decision was referred to the children's therapist due to Father's prolonged absence from the children. According to Norton, Father cannot provide stability for D.B. and K.B., he has not demonstrated an understanding of the children's needs, he cannot provide for the emotional well-being or physical needs of the children, and he has failed to abstain from drug use or criminal activity.

Parole officer Jennifer Tello testified that Father is on parole for burglary of a habitation. According to Tello, Father has not complied with his parole requirements. Father tested positive for marijuana on June 19 and August 15. He tested positive for alcohol and amphetamine on September 4, and he was positive for amphetamine on September 13. At the time of trial, Father had an active warrant for his arrest due to his parole violations.

A Department caseworker testified that Father and Mother had previous Department involvement in April of 2016 due to allegations of drug use. During the investigation, Father admitted that he used methamphetamine. Mother tested positive for methamphetamine and marijuana and admitted that she and Father used drugs together. According to Mother, she and Father used drugs while the children were in a separate room in the home. However, K.B. tested positive for marijuana during the Department's investigation. The Department was unable to determine if the children had been physically abused, but they validated allegations of neglectful supervision of the children by Mother and Father.

The trial court terminated Father's parental rights on the grounds of endangering conditions and endangerment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E) (West Supp. 2020).[3] The trial court also found that termination was in the best interest of D.B. and K.B. *See* § 161.001(b)(2).

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet.

5

denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

6

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

7

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.  *Id.*

## Analysis

In his sole issue, Father challenges the legal and factual sufficiency of the evidence to support termination of his parental rights to D.B. and K.B. on the grounds set out in section 161.001(b)(1)(D) and (E).  Only one statutory predicate ground is required to support termination when there is also a finding that termination is in a child's best interest. *In re A.V.,* 113 S.W.3d at 362.  However, in light of the Texas Supreme Court opinion in *In re N.G.,* we will review the trial court's findings under both section 161.001(b)(1)(D) and (E) because of the potential future consequences to Father's parental rights concerning a different child.  *In re N.G.,* 577 S.W.3d 230, 235-37 (Tex. 2019) (per curiam).

Sufficiency of the Evidence Under Section 161.001(b)(1)(D) and (E)

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.  *See* § 161.001(b)(1)(D), (E).  Both subsections (D) and (E) require proof of endangerment.  To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health.  *Boyd,* 727 S.W.2d at 533.  A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards.  *J.S. v. Tex. Dep't of Family &*

8

*Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330-31 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

9

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350-51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition, but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d at 503.

Here, Father points to evidence that he was incarcerated at the time that D.B. and K.B. were removed from Mother's care and that there was no evidence that he was aware of Mother's drug use or the conditions in which the children were living at the time of their removal in 2018. However, there was evidence that Father was investigated by the Department and validated for allegations of neglectful supervision in 2016, and that he admitted to using methamphetamine during this time. In that investigation, Mother confirmed that she and Father used methamphetamine in the home while the children were in another room, and one child, K.B., tested positive for marijuana.

After Father was paroled in 2019, he resumed his use of illegal substances and he was arrested and jailed twice while the case was pending. A parent's ongoing drug abuse is conduct that subjects children to a life of uncertainty and instability, which endangers the physical and emotional well-being of the children. *See In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). "A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child." *In re E.M.,* 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re F.A.R.,* No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.)).

In determining whether a parent has engaged in a course of conduct endangering a child, we may look at the conduct both before and after the child's birth. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App—Fort Worth 2001, no pet.). The evidence here is that Father used illegal drugs both before and after D.B. and K.B. were removed. As part of his service plan, the Department required Father to submit to random drug tests. The caseworker testified Father did not submit to all the testing required by his service plan. Nevertheless, testimony indicated he tested positive for illegal drugs in June, August, and September of 2019. The trial court could also consider the effect of Father's drug use on his life and ability to parent D.B. and K.B. *In re R.W.,* 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied.).

In addition, the trial court could have considered Father's failure to complete requirements of his court-ordered service plan as part of the endangering conduct analysis under subsection (E). *In re N.M.L.,* No. 07-17-00310-CV, 2018 Tex. App. LEXIS

11

607, at *13 (Tex. App.—Amarillo Jan. 19, 2018, pet. denied) (mem. op.). The children's counsellor testified that D.B. and K.B. exhibited severe behavioral problems and emotional difficulties and that he diagnosed them with reactive attachment disorder, post-traumatic stress disorder, and oppositional defiant disorder. The service plan required Father to participate in parenting classes, individual counseling, and rational behavior therapy to address his personal issues and to assist Father in obtaining skills necessary to parent D.B. and K.B. given their special needs. The caseworker testified that Father failed to participate in these necessary services. Further, Father failed to abstain from the use of illegal drugs, and he did not obtain housing or employment after he was paroled. The trial court was free to conclude that Father would be unable to provide a safe and stable home environment for the children because of his lack of interest in participating in available resources designed to assist him in overcoming his illegal drug use and obtaining necessary skills to effectively parent D.B. and K.B.

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Father knowingly placed or knowingly allowed D.B. and K.B. to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct which endangered D.B. and K.B.'s physical and emotional well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. The facts of Father's methamphetamine use in 2016, the Department's involvement in 2016, and Father's resumption of the use of illegal drugs after he was paroled in 2019 was not disputed. Accordingly, we overrule Father's sole issue.

Father does not contest the factual and legal sufficiency of the evidence supporting the best-interest finding made under section 161.001(b)(2), thereby conceding that the evidence was legally and factually sufficient to support this finding.

Conclusion

The judgment of the trial court terminating Father's parental rights is affirmed.


Judy C. Parker
Justice