

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00046-CV

IN THE INTEREST OF E.M.-C., A CHILD,

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 098433-D-FM, Honorable Alyce Bondurant, Visiting Associate Judge, Presiding

June 3, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

In this accelerated appeal, appellant, Mother, seeks reversal of the trial court's judgment terminating her parental rights to E.M.-C.[1]  By her appeal, Mother asserts the evidence is insufficient to support the predicate grounds and she received ineffective assistance of counsel.  We affirm the judgment of the trial court.

**BACKGROUND**

The Texas Department of Family and Protective Services became involved with

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents of the child as "Mother" and "Father."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

Mother in December of 2023, when both Mother and E.M.-C. tested positive for methamphetamine at the time of E.M.-C.'s birth. At the hospital, Mother admitted to the Department investigator that she had used methamphetamine a week before E.M.-C.'s birth.

Mother has a history of methamphetamine use and previously had her parental rights to another child terminated due to her addiction. In October of 2022, Mother pleaded guilty to possession of a controlled substance (methamphetamine). Her two-year sentence was suspended, and she was placed on community supervision for three years. On August 9, 2023, Mother's community supervision was revoked, and she was sentenced to six months in jail. She was released from jail on October 27, 2023, shortly before E.M.-C. was born.

The Department sought and obtained an emergency removal order and then filed its petition for protection, conservatorship, and termination of Mother's parental rights.[2] Following an adversary hearing, the trial court found that it was contrary to E.M.-C's welfare to remain in Mother's care. The Department was appointed temporary managing conservator of E.M.-C., and she was placed with a sibling in a foster home. A visitation schedule was implemented, and Mother was permitted to visit with E.M.-C. under the Department's supervision provided that she submit a negative drug screen.

The Department developed a service plan for Mother and the trial court ordered compliance with the plan's requirements. Among other things, the plan required Mother to obtain stable housing and employment; participate in visitation with E.M.-C.; maintain

---

[2] Father's parental rights were also terminated in this proceeding. Father does not appeal.

a drug-free lifestyle; submit to random drug screenings; complete a psychological evaluation; attend individual counseling sessions; and complete parenting classes.

Mother completed parenting classes while she was participating in an inpatient drug treatment program. She submitted to some but not all of the drug screens requested by the Department. Mother admitted to the caseworker that she had relapsed after she completed drug treatment. She visited E.M.-C. three times, and her last visit was approximately two months before trial. She has not furnished any paystubs to verify that she is employed.

Mother did not attend the final hearing in December of 2024. The caseworker testified that Mother had texted her the day before the hearing to obtain the link for the Zoom hearing. This was the first response that the caseworker had from Mother in more than a month.

At the conclusion of the hearing, the trial court terminated Mother's parental rights to E.M.-C. on the predicate grounds of endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of her child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O).[3] The trial court also found that termination was in the best interest of E.M.-C. *See* § 161.001(b)(2). The Department was appointed as permanent managing conservator of E.M.-C. Mother timely appealed the resulting judgment.

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

## STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have

4

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

**APPLICABLE LAW**

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the

5

trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

**ENDANGERMENT FINDING**

In her first issue, Mother asserts that the evidence was not legally or factually sufficient to support a judgment of termination under section 161.001(b)(1)(E).

Subsection (E) permits a trial court to terminate parental rights if it finds that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." § 161.001(b)(1)(E).  To endanger means to expose to loss or injury, or to jeopardize.  *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (citing *Boyd*, 727 S.W.2d at 533). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury.  *Id.*  Under subsection (E), the cause of the danger to the child may be proven by the parent's conduct, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act.  *In re M.J.M.L.,* 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle v. Tex. Dep't of Protective & Reg. Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied).  Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.  *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.).  The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct.  *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).  The law does not require that a child be the victim of abusive conduct before the Department can involuntarily terminate a parent's rights to the child.  *Dallas Cnty. Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992,

7

no pet.). As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of the child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009).

On appeal, Mother argues that the only evidence of endangerment is the failure to submit to drug testing and an alleged admission of methamphetamine use. She further contends there is not any evidence of how this conduct endangered E.M.-C.

In determining whether a parent has engaged in a course of conduct endangering a child, we may look at the conduct both before and after the child's birth. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). Here, the trial court heard evidence that Mother had a history of methamphetamine use and prior involvement with the Department which resulted in termination of her parental rights to another child. She was released from incarceration about a month before E.M.-C. was born, due to a 2022 conviction for possession of a controlled substance (methamphetamine). Mother admitted to using methamphetamine during her pregnancy, and both Mother and E.M.-C. tested positive for the substance when E.M.-C. was born. E.M.-C. remained hospitalized in the neonatal intensive care unit for several days due to exhibiting withdrawal symptoms related to drug exposure or syphilis. While Mother completed a drug treatment program, she began missing drug tests and weekly visits with E.M.-C. shortly after she was discharged. According to the caseworker, Mother told her that she had relapsed, and she failed to submit to any drug screens after September 24, 2024. Her failures to attend requested drug screens are presumed positive test results under the terms of her service

8

plan.  *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (factfinder may reasonably infer from parent's failure to attend scheduled drug screenings that parent was avoiding testing because parent was using drugs).  A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child.  *See In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied).

Further, the trial court could have considered Mother's failure to complete significant requirements of her service plan as part of its endangering conduct analysis under subsection (E).  Notably, she failed to submit to drug testing, missed numerous visitations with E.M.-C., refused to allow the caseworker access to her residence, and failed to provide proof of employment.  *See In re H.G.,* No. 07-21-00278-CV, 2022 Tex. App. LEXIS 2687, at *20 (Tex. App.—Amarillo Apr. 25, 2022, pet. denied) (mem. op.). From this evidence, the trial court was entitled to find that Mother's drug use had an adverse effect on her ability to bond with and parent E.M.-C., thus jeopardizing her emotional and physical well-being.  *Id.* at *18.

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother engaged in conduct which endangered E.M.-C.'s emotional and physical well-being.  The same evidence is factually sufficient to support the trial court's affirmative finding.  We overrule Mother's first issue.

In light of our conclusion regarding the trial court's finding on subsection (E), we need not address Mother's second and third issues and the findings under subsection (N) and (O).  *In re A.V.,* 113 S.W.3d at 362 ("Only one predicate finding under section

9

161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").[4]

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

In her last issue, Mother asserts her counsel was ineffective and the representation provided was tantamount to having no representation.

In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases and this right encompasses the right to effective counsel. § 107.013(a)(1); *In re M.S.,* 115 S.W.3d at 544. The standard of review to apply in evaluating claims of ineffective assistance of counsel in termination of parental rights cases is the same as that set forth by the United States Supreme Court for criminal cases in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Under the well-established *Strickland* test, proving ineffective assistance of counsel requires a showing that (1) counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which 'requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *In re H.R.M.,* 209 S.W.3d 105, 111 (Tex. 2006) (per curiam) (quoting *In re M.S.,* 115 S.W.3d at 545).

To determine whether representation was deficient, we must consider all of the circumstances surrounding the case and determine whether counsel was "reasonably

---

[4] Mother does not contest the best-interest finding under section 161.001(b)(2).

10

effective." *In re M.S.,* 115 S.W.3d at 545. In doing so, we afford great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* In conducting the harm analysis under the second prong of *Strickland*, reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Id.* at 549–50. An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 622–23 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd).

Mother asserts that her counsel was deficient because she did not call any witnesses, did not conduct any cross-examination, and made no argument. According to Mother, a presumption of prejudice is warranted under these circumstances.

Our review of the record indicates that Mother's counsel in fact questioned both of the Department's witnesses and timely objected to evidence proffered on behalf of the Department. There is nothing in the record before us showing the reason that counsel did not make an opening statement or closing argument. When the record is silent regarding trial counsel's reasons for her actions, we may not speculate to determine whether trial counsel is ineffective. Without an explanation from trial counsel for her actions and in light of the strong presumption in favor of reasonable representation, the record here does not reflect that trial counsel lacked sound strategic reasons for her conduct. *See In re M.S.,* 115 S.W.3d at 549; *A.D. v. Tex. Dep't of Fam. and Protective Servs.*, 673 S.W.3d 704, 721 (Tex. App.—Austin 2023, no pet.) (decisions regarding

whether to waive opening statement or make closing argument "are inherently strategic decisions.")  As to the second prong of the *Strickland* test, Mother has not even attempted to show what witnesses counsel should have called and does not establish the substance of any testimony that might have been given, or how such testimony would have resulted in a different outcome.  Moreover, she does not explain how counsel's alleged deficiencies prejudiced the case, deprived her of a fair trial, or produced an unreliable result.  *See In re H.R.M.,* 209 S.W.3d at 111.  As such, we conclude that Mother has failed to show that her trial counsel was deficient or that she prejudiced her defense.  We overrule issue four.

## CONCLUSION

Having overruled the issues raised by Mother's appeal, we affirm the judgment of the trial court terminating Mother's parental rights to E.M.-C.


Judy C. Parker
Justice

12