

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-21-00205-CV

**IN THE INTEREST OF K.R. AND K.R., CHILDREN**

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 78,505-L1, Honorable James W. Anderson, Presiding

February 3, 2022

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

In this accelerated appeal, Mother seeks reversal of the trial court's judgment terminating her parental rights to her children, K.A.R. and K.L.R.[1]  By her appeal, Mother raises two issues.  In her first issue, Mother challenges the sufficiency of the evidence to support the trial court's best interest finding.  In her second issue, Mother challenges the

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Mother," and to the children by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  Father's parental rights were also terminated in this proceeding.  Father does not appeal.

appointment of the Department as permanent managing conservator. We affirm the judgment of the trial court.

## Background

In December of 2019, the Department received an intake involving Mother, Father, and seven-month-old K.A.R. According to the Department's investigation, Mother and Father were involved in an automobile accident and fled the accident scene as law enforcement was arriving. When they were stopped by law enforcement, Mother was driving and K.A.R. was seated in a car seat. Both Mother and Father were arrested on outstanding warrants, and Mother was charged with evading arrest or detention with a motor vehicle and child endangerment. K.A.R. was placed with his maternal grandmother. During the Department's investigation, Mother admitted that she was a daily marijuana user. The Department implemented a safety plan with Mother having supervised visits by the maternal grandmother. In February of 2020, the Department referred the family to the Family Based Safety Service (FBSS) division and offered counseling, parenting classes, substance abuse evaluation and testing, and mental health services.

While the FBSS case was open, the Department received an intake involving negligent supervision of K.A.R. and allegations of illegal drug use by the maternal grandmother. The Department requested that the maternal grandmother submit to drug testing and she was positive for methamphetamine. K.A.R. also tested positive for methamphetamine. K.A.R. was removed from the maternal grandmother's care and placed with a maternal great-aunt and uncle.

2

In the spring of 2020, Mother tested positive multiple times for marijuana and admitted to her FBSS worker that she had relapsed. Mother made three appointments to complete an inpatient drug treatment program, but she did not follow through with these appointments.

In July of 2020, K.L.R. was born. When K.L.R. was one month old, the Department discovered that Mother had violated the safety plan by allowing the maternal grandmother access to K.L.R. Since Mother had not made any progress on her FBSS services, the Department filed its original petition for protection of a child on August 21, 2020.[2] After an adversary hearing, the court granted a non-emergency removal and named the Department as managing conservator of both children. K.L.R. was placed with a maternal great-aunt and K.A.R.'s placement was changed to the home of his maternal great-grandmother.

The Department developed a family service plan for Mother. The service plan set out several tasks and services for Mother to complete before reunification with K.A.R. and K.L.R. could occur. These tasks and services included the following: attend parenting classes; obtain and maintain stable housing that is appropriate and safe for the children; locate and maintain employment sufficient for her family's needs; attend visitation; maintain contact with the caseworker; maintain a drug-free lifestyle; submit to random drug screens; participate in a substance abuse assessment and follow recommendations; attend individual counseling; participate in and complete rational behavior therapy (RBT);

---

[2] On October 30, 2020, the Department filed its second amended petition for protection, conservatorship, and termination of parental rights.

3

participate in and complete a psycho-social evaluation; and attend a Women Against Violence program (WAV).

The trial court conducted a bench trial through Zoom videoconferencing on September 3, 2021.

At trial, the Department caseworker testified that Mother had made minimal progress on her plan of service. Mother was unable to maintain stable housing. She lived with Father periodically, and then she moved in with a person who could not pass a Department background check. She worked as a waitress for two weeks before she was terminated from her employment. Mother did not complete her mental health services, individual counseling, or RBT. Mother attended some sessions of the WAV program, but she did not complete the program. Mother submitted to random drug testing, but she did not maintain a drug-free lifestyle. She completed a substance abuse assessment, but she did not complete the inpatient rehabilitation recommended. In November of 2020, Mother admitted that she had been using methamphetamine, marijuana, and alcohol. In December of 2020, the caseworker drove Mother to an inpatient substance abuse treatment center in Plainview. Mother was admitted for a minimum thirty-day stay, and she left after two days. In late January of 2021, the caseworker accompanied Mother a second time for inpatient substance abuse treatment, and this time Mother stayed nine days before leaving the facility.

The Department presented evidence that Mother pled guilty on November 30, 2020, to a third-degree felony of evading arrest and detention with a vehicle, and a state jail felony of abandoning and endangering a child. Mother was placed on deferred

4

adjudication community supervision for four years for each offense. As a part of her community supervision probation, Mother was to abstain from the use of illegal substances and refrain from committing another criminal offense. While on probation, Mother admitted to her probation officer that she had used methamphetamine. Subsequently, a supplemental order amending the conditions of her probation was signed, and Mother was ordered to a substance abuse felony punishment facility (SAFPF) for nine months beginning in June of 2021.

At the time of trial, Mother was incarcerated in SAFPF with an expected release date of March 23, 2022. Mother had been incarcerated in the Randall County Jail for violations of her probation for two and a half months before she was transferred to SAFPF.

Mother testified that she has recently obtained her GED. She is working on her anger management issues, attending chemical dependency groups, and will begin parenting classes soon. She is learning how to live without drugs and how to manage crisis situations.

Mother plans to work her Department services after she is released. She acknowledged that she is currently unable to take care of the children. Mother wants her children to remain with her family and she thinks that they are in good placements. Mother admitted that she did not take the case seriously enough in the beginning and her drug use "caused [her] misjudgment and misleading direction of life." Mother has not provided any financial support for K.A.R. or K.L.R. since they have been in care.

According to Mother, she was sixteen years old when she started using marijuana. She used methamphetamine in 2018, and "occasionally" used methamphetamine in

5

2019. She testified she used methamphetamine after K.A.R. was born in 2019, and before and after K.L.R. was born. She admitted to using marijuana during her pregnancy with K.L.R.

K.A.R. is twenty-seven months old and placed with his maternal great-grandparents. K.L.R. is thirteen months old and she is placed with her maternal great-aunt. The children are well taken care of and see each other several times a month. These placements have cared for these children the majority of their lives and are the only family these children have known. Each of the placements has expressed an interest in adopting the children if Mother's parental rights are terminated. The caseworker testified that termination was in the best interest of K.A.R. and K.L.R. because Mother has not demonstrated that she can provide for the emotional and physical needs of the children now and in the future. Adoption of the children by their respective placements will provide permanence and further stability for the children.

The trial court terminated Mother's parental rights to K.A.R. and K.L.R. on the grounds of endangering conditions, endangerment, and failure to comply with a court order that established actions necessary to retain custody of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).[3] The trial court also found that termination was in the best interest of K.A.R. and K.L.R. *See* § 161.001(b)(2). The Department was appointed the permanent managing conservator of both children.

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a

judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

<u>Best Interest</u>

In her first issue, Mother challenges the factual and legal sufficiency of the evidence to support the best interest finding made under section 161.001(b)(2). She does not contest the predicate grounds for termination under section 161.001(b)(1).

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations.

*Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

A determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.,*

95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The trial court was allowed to consider evidence in support of the predicate grounds in making the best interest determination and Mother does not challenge those findings on appeal. That evidence established that Mother has a history of substance abuse since 2016. The Department became involved with Mother and K.A.R. in December of 2019, when Mother was involved in a hit and run accident while K.A.R. was a passenger in her vehicle. At that time, Mother admitted to daily marijuana use. The Department referred Mother for FBSS and offered her services to address her substance abuse. Despite the Department's assistance, Mother continued to use marijuana while she was pregnant with K.L.R. After K.L.R.'s birth in July of 2020, Mother's substance abuse progressed to her use of methamphetamine and the Department was granted temporary managing conservatorship of K.A.R. and K.L.R. After the removal of the children from her care, the Department developed a family plan of service and Mother's participation in services was court ordered. The trial court heard evidence that Mother

11

completed minimal services required in her service plan. In November of 2020, Mother was placed on community supervision probation after she pled guilty to a felony offense of evading arrest and detention and a state jail offense of abandoning and endangering a child. Mother's continued use of methamphetamine resulted in a modification of her probation and her incarceration in a SAFPF for nine months. The trial court's unchallenged predicate grounds are probative in the best interest determination. *In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing, *inter alia, In re C.H.,* 89 S.W.3d at 28). A parent's drug use demonstrates an inability to provide a stable environment for the children and an inability to provide for the children's emotional and physical needs. *In re E.M.,* 494 S.W.3d 209, 222-23 (Tex. App.—Waco 2015, pet. denied). The unchallenged statutory grounds for termination are significant in our review of the best interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20. After the children were removed from her care, Mother struggled to find housing and she could not maintain employment. The Department attempted to connect Mother with substance abuse treatment for more than eighteen months. At the time of trial, Mother testified that she was presently unable to care for K.A.R. and K.L.R. due to her incarceration, and she wanted the children to remain in their current placements. She acknowledged that she would not be discharged from the SAFPF program for another six months and, after her release, she would be required to go to a halfway house and

complete a drug court program. In contrast, the Department's plan for K.A.R. and K.L.R. was permanence. The trial court heard testimony from the caseworker that twenty-eight-month-old K.A.R., and thirteen-month-old K.L.R., are doing well in their relative placements. The children have spent a majority of their lives in the care of these relative placements, and the placements wish to adopt the children. Mother has not been a caretaker for the children since K.A.R. was eight months old and K.L.R. was one month old. The children's placements have made arrangements for the children to visit each other several times a month. When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for K.A.R.'s and K.L.R.'s adoption provides permanence and stability for them and weighs heavily in favor of the trial court's conclusion that termination of Mother's parental rights is in the best interest of both children.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of K.A.R. and K.L.R. We overrule Mother's first issue challenging the best interest determination.

Appointment of Department as Managing Conservator

In her second issue, Mother argues the Department did not present evidence that the best interest of the children would be served by termination rather than naming the mother as a possessory conservator of the children.

13

We review a conservatorship determination for an abuse of discretion and will reverse only if the decision is arbitrary and unreasonable. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007). Texas Family Code section 161.207(a) provides in part that if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint "a suitable, competent adult," the Department, or a licensed child-placing agency as managing conservator of the child. § 161.207(a).

Here, Mother does not challenge any of the statutory grounds for termination and, as a result, has conceded the evidence was sufficient to support the predicate grounds. *In re Z.G.,* No. 07-18-00339-CV, 2019 Tex. App. LEXIS 40, at *10 (Tex. App.—Amarillo Jan. 4, 2019, no pet.) (mem. op.). In our consideration of Mother's first issue, we have concluded the evidence was sufficient to support the trial court's findings under section 161.001(b)(2). There was no evidence presented to establish appointment of another suitable, competent adult as conservator of the children. Accordingly, Mother's argument against the trial court's appointment of the Department as the permanent managing conservator is without merit. *In re N.T.,* 474 S.W.3d 465, 481 (Tex. App.—Dallas 2015, no pet.). We overrule issue two.

## Conclusion

Having overruled both of Mother's issues, we affirm the judgment of the trial court terminating Mother's parental rights.

Judy C. Parker
Justice

14